(No. 23751.—)

JOHN J. JOHNSON, Appellant, *vs.* WILLIAM S. HEFFERAN *et al.* Appellees.

*Opinion filed February 12, 1937.*

JOSEPH E. SNOWDEN and HEBER T. DOTSON, for appellant.

WILLIAM ANNAN TAYLOR, GEORGE GILLETTE, and ELMER M. LEESMAN, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

John J. Johnson, hereafter called the plaintiff, filed in the circuit court of Cook county a complaint seeking to have a trust imposed on certain real estate originally owned by the plaintiff subject to two mortgages. By the prayer of the complaint the plaintiff also requested an accounting and offered to pay the defendants whatever sum or sums may be decreed to be due them. The complaint was twice amended and is referred to in the briefs as the second amended complaint. It will hereafter be called the complaint. A large number of persons and certain corporations were made defendants. Certain of the defendants made a motion in pursuance of section 45 of the Civil Practice act to dismiss the complaint, and also interposed separate special grounds of objection to certain of its allegations. The chancellor dismissed the cause as to the defendants who joined in the motion. From that order the plaintiff has prosecuted an appeal direct to this court.

The plaintiff is a resident of Chicago. On July 10, 1925, he was the owner of two lots and an apartment building thereon in Chicago. William H. Butterfield, the owner of a junior mortgage against the property, instituted a foreclosure proceeding. The plaintiff, (the defendant in that proceeding) failed to redeem within the twelve months pe-

riod allowed him by law. Thereafter the plaintiff entered into a contract with Butterfield, the purchaser at the foreclosure sale, to acquire the master's certificate of sale and to re-acquire the property. The complaint recites that "the plaintiff agreed to buy the said master's certificate at the price and condition offered by William H. Butterfield." The plaintiff employed George C. Adams as his attorney. The plaintiff and Adams, on October 8, 1928, entered into a contract which recited the fact of the foreclosure proceeding; that the period of redemption would expire on or about October 9, 1928; that the plaintiff was unable to redeem; that in consideration of legal services rendered and to be rendered to the plaintiff, Adams was authorized to effect an arrangement, if he could do so, permitting a redemption and financing of the property for which Adams should receive fifty per cent of "said sum or sums that can be realized out of said property;" that the title to the property was to be taken in trust by the Chicago Trust Company "for the benefit of the interested parties." The contract was recorded on November 9, 1928.

The plaintiff claims that by reason of the two contracts and the other transactions recited in the complaint he acquired the equitable ownership of the property. The complaint consists of many allegations, all but two of which are of considerable length. Only the substance of the allegations necessary to be considered will be here stated. In addition to the facts above set forth it is alleged that subsequent to the execution of the contract between the plaintiff and Adams the latter exhibited the contract to certain officers of two banks, and upon their inspection of the premises a new loan, to be secured by a mortgage on the premises, was arranged to be made with the funds of one of the banks. Certain conditions were imposed by the maker of the loan, namely: that a person other than the plaintiff, and against whom there were no judgments, (to be named by Adams) should take title; that such nominee should execute notes

for $50,000 secured by a mortgage on the property; that Adams should give his personal note for $50,000 to the Exchange State Bank of Chicago and that the bank should take the mortgage notes mentioned as collateral for Adams' personal note. Upon the fulfillment of those conditions the Exchange State Bank of Chicago would pay the necessary money to Butterfield, the purchaser at the foreclosure sale. The title to the property was to be transferred to the person named by Adams, and the person so designated should execute a deed in trust to the Chicago Trust Company as additional security for the loan.

The complaint alleges that Adams procured his stepson, Siegel E. Young, to take the title to the property and on October 10, 1928, a master's deed was issued to Young and on the same date Young signed a trust deed to the Chicago Title and Trust Company to secure notes for $50,000. On the following day Young conveyed the property to the Chicago Trust Company by a deed in trust subject to a trust agreement numbered 2419 which purported to have been made for the sole benefit of the Exchange State Bank of Chicago.

The complaint alleges that Young paid no consideration for the conveyance of the premises in question and has not made any claim thereto; that Adams, Young, the president and vice-president of the Exchange State Bank of Chicago and the vice-president of the Chicago Trust Company, (the same person as the vice-president of the Exchange State Bank of Chicago,) each knew that the plaintiff was the equitable owner of the option to purchase the premises described and that Young was taking title thereto as trustee for the benefit of the plaintiff and that each of the persons named knew that Butterfield was selling the premises for the amount involved because of the latter's desire to aid the plaintiff, who had been defrauded in previous transactions by third persons, and which made it necessary for Butterfield to foreclose. The complaint alleges that on

April 20, 1929, the Exchange State Bank of Chicago authorized the Chicago Trust Company, trustee, to execute a deed to Charles J. Burleigh for the premises, and the deed was so executed; that the bank held the premises as security for the loan to Adams, and that the Exchange State Bank of Chicago and the persons heretofore mentioned had notice of the interest of the plaintiff and Adams in and to the premises, but that such conveyance was without the knowledge and consent of the plaintiff; that on the same date Burleigh executed an instrument in which he acknowledged that he was holding title to the property in trust for the Exchange State Bank of Chicago; that on April 29, 1929, Burleigh executed two mortgages, one for $60,000 and one for $30,000, the first mortgage conveying the premises to Hefferan, trustee, and the second to the Chicago Title and Trust Company, as trustee, to secure a note in that amount; that the property was then encumbered with a prior first mortgage for $50,000 which had been paid, but the mortgage had not been released of record; that on January 24, 1930, Burleigh, trustee, conveyed to William J. Rathje, receiver of the Exchange State Bank of Chicago, his interest in the property, and that Rathje took with knowledge of the character of Burleigh's title, and that Hefferan, trustee in the mortgage for $60,000, knew or could have known from the transactions and conveyances by and between the respective parties, of the interest of the plaintiff.

The complaint recites the conveyance by Rathje, receiver, to Henry R. Otto, but alleges that Otto was then an agent and employee of Rathje; that Otto succeeded Rathje as receiver of the Exchange State Bank of Chicago upon the death of Rathje; that Otto while acting as receiver sold the collateral note of Adams, with the remaining security, to Hefferan for $1120, but without any court order, and title to the premises was taken by one John H. Cougle, the husband of Mary Stocker Cougle, (sometimes

known as Mary E. Cougle) secretary to Hefferan. Cougle died leaving surviving his widow, Mary Stocker Cougle, and five sisters named in the complaint.

The complaint alleges that the plaintiff did not have knowledge of all the facts, conveyances and transactions with reference to the property at the time they transpired; that the plaintiff's attorney did not inform the plaintiff that Young took title for his benefit; that the plaintiff had no knowledge that an assignment had been made by Butterfield to Young until long subsequent thereto; that the plaintiff did not authorize Adams or any other person to cause the assignment by Butterfield to be made to Young; that the plaintiff did not know that a deed had been executed by a master in chancery to Young as grantee; that the plaintiff made inquiries of his attorney for upward of two years, and that his attorney assured him that the matter was taken care of and that the property would be returned to him; that late in the year 1931 the plaintiff became distrustful of Adams, his attorney, and sought other advice; that the attorney representing him subsequently to Adams had been working to bring all the facts of the intricate transaction before the court, but not until the filing of the complaint had the plaintiff been able to present all the facts to the court; that such failure was due to the fraudulent and secretive action of his former attorney, Adams, and to his inability to procure efficient, honest and intelligent legal services, and to his difficulty in securing data from two closed institutions, which data was necessary as a basis of his case. The prayer of the complaint is that the court decree the property conveyed by Butterfield to Young to be impressed with a trust for the benefit of the plaintiff, and that it continue to be impressed with a trust with the subsequent holders of title, and that the plaintiff be declared to be the legal and equitable owner of the premises. By the complaint the plaintiff also seeks an accounting and offers to pay to the defendants whatever may be decreed to be due them.

The defendants' motion to dismiss as to the merits of the entire complaint is supplemented by twenty-one special grounds of objection to separate allegations of the complaint. Among other averments in the motion is one that no cause of action is stated against the defendants; that there is nothing to show that the defendants, other than Adams, are not *bona fide* purchasers without notice; that only a contract obligation on the part of Adams has been shown; that certain of the defendants, (who are appellees here) are not accounted for in the complaint, except as *bona fide* purchasers, to whose rights the plaintiff admits his rights are subject; that the case is still pending as to certain defendants; that the complaint shows *laches* on its face, and that the plaintiff's equity must yield to that of the defendants because the plaintiff put it in the power of his attorney, Adams, who was the plaintiff's agent, to' do what was done. Other grounds of objection are that the allegations as to notice and knowledge of the various defendants are conclusions of the pleader, and still other allegations are unsupported by facts; that some allegations are argumentative, and for each of these defects in the respective allegations they should be stricken, and that the entire complaint should be dismissed or stricken.

No evidence was offered. The principal question presented by the motion to dismiss relates to the sufficiency of the bill as a whole and in its several allegations. The complaint admits that the time within which the plaintiff (the defendant in the foreclosure proceeding) might redeem, had expired before he took any steps to attempt to redeem or purchase the property. . The date of the foreclosure sale was July 11, 1927, and the expiration of the redemption period for the defendant in the foreclosure proceeding (the plaintiff here) would be July 11, 1928. The contract thereafter between the plaintiff and Butterfield, the purchaser at the foreclosure sale, is not shown to be in writing. Its provisions are not disclosed, except as they might be in-

ferred from allegations by way of conclusion that the plaintiff had an equity of redemption, and from recitations of what was done in the carrying out of various conveyances and transactions subsequent thereto. The allegations by way of conclusion are inconsistent with others of a direct nature. The agreement between the plaintiff and Butterfield is referred to in the complaint as an option to purchase, under which the plaintiff asserts that he was the equitable owner of the right of redemption, but the complaint admits the plaintiff's inability to exercise such option, and that as a means of effectuating the purpose of the plaintiff he entered into a contract with Adams. This contract was exhibited to the bank officials and, as in substance recited by the complaint, was understood by them to be the basis for a right of the plaintiff and Adams to redeem. This contract recites "the period of redemption expires on or about the 9th day of October, 1928." It also recites, "said property can be redeemed and saved from said foreclosure."

The respective rights of a defendant in a foreclosure proceeding, and a decree or judgment creditor of such defendant, are conferred by sections 18 and 20 of the act on Judgments, Decrees and Executions, (State Bar Stat. 1935, pp. 1954, 1955,) which allow them twelve and fifteen months, respectively, in which to redeem. The plaintiff's right to redeem had expired. There is nothing in the record to show that Adams was a decree or judgment creditor of the plaintiff, which would give him a right to redeem within a period of fifteen months. In the absence of such showing Adams had no such right. (*Reed* v. *Behm,* 364 Ill. 399.) Whatever rights the plaintiff and Adams possess are independent of the statute with respect to redemption, and if any rights exist they are by reason of the contract alone.

The recitation in the contract between the plaintiff and Adams that "the title to the said property is to be taken in trust by the Chicago Trust Company for the benefit of the

interested parties" does not show that the plaintiff was to be revested with title to the premises formerly owned by him. The trust agreement pursuant to which the Chicago Trust Company took title is not shown to have been recorded and its provisions do not appear in the complaint. The provisions in the contract between the plaintiff and Adams with respect to the profit or compensation of Adams for his services in the transactions, while they seek to recover the property from the purchaser at the foreclosure sale, might well be considered as merely showing a purpose on the part of the plaintiff and Adams to realize a sum of money from the sale of the property. Their contract appears to be one evidencing a joint venture to share the profits which might accrue from a refinancing of the property, whether it was considered a redemption or a purchase, for Adams was to receive "fifty per cent of said sum or sums that can be realized out of said property." The quoted words indicate that a sale was contemplated. The disposal or conveyance of the real estate substantially in the manner it was disposed of by Adams would not be inconsistent with the agreement between himself and the plaintiff.

In none of the allegations of the complaint are facts stated, except by way of conclusion, which if proved would necessarily result in the plaintiff's acquisition of the title or the loss of such title by the defendants who joined in the motion to dismiss. Some of the allegations in the complaint appear to be predicated upon rights conferred by the statute with respect to redemption from foreclosure. Even if proper allegations showed that either the plaintiff or Adams had existing rights by reason of the redemption statute, that allegation of fact would not show that a freehold was involved so as to give this court jurisdiction on a direct appeal. Questions of title are not adjudicated in foreclosure proceedings. (*Wright* v. *Logan*, 364 Ill. 33; *Jones* v. *Horrom*, 363 id. 193; *Lithuanian Alliance* v. *Home Bank and Trust Co.* 362 id. 439; *National Bank of the Re-*

*public* v. *168 Adams Building Corp.* 359 id. 27.) A freehold only collaterally, contingently or incidentally involved does not warrant a direct appeal to this court. (*Schmitt* v. *Wright,* 357 Ill. 509; *Kagy* v. *Luke,* id. 512.) The word "freehold" as it is used in the statute to give this court jurisdiction on direct appeal, does not include the mere right to do that which in equity will entitle the party to a freehold. (*United Electric Coal Companies* v. *Keefer Coal Co.* 338 Ill. 288; *Duncanson* v. *Lill,* 322 id. 528.) The fact that the plaintiff has sought to put the title to the land in issue by his complaint does not require this court to take jurisdiction, if a decree, upon the proper pleadings in the case, may be entered without affecting the freehold. *Prudential Ins. Co.* v. *Hoge,* 359 Ill. 36; *Lithuanian Alliance* v. *Home Bank and Trust Co. supra.*

Upon an accounting, (which is sought by the prayer of the complaint,) and upon a determination of what is due from the plaintiff to the defendants, (which the plaintiff admits his willingness to allow,) he might or might not be able to pay the amount required. In the event the plaintiff did not pay the amount he would not be entitled to the real estate in question. (*Long* v. *Wilson Stove and Manf. Co.* 354 Ill. 465; *Henry* v. *Britt,* 265 id. 131.) Moreover, if one or more claims made in the complaint are proper for the consideration of a court of equity, a decision favorable to the plaintiff might only require the defendants who joined in the motion to dismiss to answer the complaint, the same as upon the overruling of a demurrer. *Haas* v. *Lincoln Park Comrs,* 339 Ill. 491; *Miller* v. *Hale,* 308 id. 275.

No grounds having been properly stated in the complaint to give this court jurisdiction on a direct appeal, the cause will be transferred to the Appellate Court for the First District. *Cause transferred.*