(No. 27228.—

SAMUEL T. COHEN, Appellant, *vs.* BENJAMIN OGUSS *et al.*, Appellees.

*Opinion filed November 16, 1943.*

354

ANDALMAN & ANDALMAN, and S. G. LIPPMAN (MAXWELL N. ANDALMAN, of counsel,) for appellant.

LOUIS M. MANTYNBAND, GEORGE L. SIEGEL, and HENRY TIERSKY, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

The sole question requiring consideration on this appeal is whether a freehold is involved in the litigation.

From the pleadings and the evidence it appears that in January, 1940, Samuel T. Cohen, an attorney at law, and Benjamin Oguss, jointly purchased, for $52,000, a parcel of real estate, improved with a seven-story building, located at 900 Argyle street, Chicago. Although construction had been commenced in 1929, the building was in an uncompleted state, and the premises were encumbered with taxes, interest and penalties, aggregating approximately $65,000. Title was taken in the name of the Liberty National Bank of Chicago, as trustee, under trust No. 2865, each of the purchasers taking an undivided one-half interest. The trust agreement expressed the understanding of the parties that the interest of any beneficiary should consist solely of a power of direction to deal with the title to the property and to manage and control it, and the right to receive the proceeds from rentals and from mortgages, sales or other disposition of the premises, and that this right in

the avails of the property should be deemed to be personal property, and might be assigned and transferred as such; that in case of the death of any beneficiary under the agreement, during the existence of the trust, his right and interest should pass to his executor or administrator and not to his heirs-at-law, and that no beneficiary had, or at any time should have, any right, title or interest in or to any portion of the real estate as such, either legal or equitable, but only an interest in the earnings, avails and proceeds. Of the purchase price, Oguss paid $47,000, and Cohen $5000. In addition, Cohen agreed to, and did, institute tax litigation to reduce the liability for taxes. Oguss, among other things, agreed, optionally, to advance the money for these taxes, provided a reduction to $13,000 or less be obtained. March 18, 1940, a decree was entered adjudicating the total taxes at $6544.74. On April 1, 1940, Cohen sold to Joseph G. Engert half of his one-half interest. April 22, 1940, Cohen and Engert disposed of their one-half interest to Raymond Sher for $16,400, representing the return of their investment of $5000, a profit of $6500, and attorney's fees of $4900 to Cohen incident to the tax litigation. On the day last named, Cohen and Engert assigned their interests to Oguss, who, in turn, executed a direction to the Liberty National Bank, ordering a conveyance to Sher. By deed dated May 10, 1940, the bank conveyed to Sher and his wife. June 21, 1940, Sher, joined by his wife, executed a deed to the bank, as trustee, under a new trust, No. 3047. A trust agreement then executed designated Sher as sole beneficiary. June 24, 1940, Sher gave a written direction to the bank to execute, as trustee, a note for $100,000 secured by a trust deed. August 9, Sher executed an assignment of a one-half interest in the trust to Arthur J. Kramer, which, on August 10, Kramer assigned to Oguss. October 7, 1940, Oguss delivered the assignment to the trustee bank. The building was completed, furnished and ready for occupancy

by October, 1940. Cohen first asserted a claim against Oguss and Sher by letter in early October, 1940.

December 27, 1940, the plaintiff, Cohen, filed his complaint and, later, an amended complaint, in the superior court of Cook county against the defendants, Oguss, Sher, Engert and the Liberty National Bank, as trustee, alleging that by reason of the execution of an agreement describing the respective rights and duties of Oguss and himself, incorporated in the pleading as exhibit "C," a fiduciary relationship was created, whereby each owed to the other the highest degree of loyalty, full disclosure and fair-dealing, and each was entitled to repose the utmost confidence in the other with respect to the *corpus* of the joint adventure; that, subsequent to the entry of the decree adjudicating taxes, Oguss adopted an attitude of futility, claiming he had suffered financial reverses rendering him unable to advance sufficient moneys to meet the additional costs, indicated by revised increased estimates required to pay for the improvements; that Oguss stated he had concluded a joint adventure to be unwise, and, as a solution, recommended a sale of the property, suggesting Sher as a prospective purchaser of both their interests. Further allegations relate to plaintiff's unavailing efforts to induce Oguss to not abandon the proposition and to negotiations by plaintiff and Oguss with Sher relative to the latter's acquisition of their interests, culminating in a statement by Oguss that both he and plaintiff would benefit by selling to Sher and a further statement by Oguss's attorney advising plaintiff partition proceedings offered the only alternative if a deal were not consummated with Sher. Additional allegations are that, relying upon the representations, believing that he was assisting Oguss and that Sher was purchasing Oguss's interest, and to avoid a partition proceeding, plaintiff, on April 22, 1940, agreed in writing to sell to Sher for $16,400; that the transfer of his interest to Oguss was made at the suggestion of an officer of the bank to

facilitate the transfer of the entire fee to Sher, and that Oguss, in plaintiff's presence, on April 22, signed a written direction to the bank to convey full title to Sher; that Oguss's direction in this regard was a sham; that, immediately thereafter, defendants made arrangements to complete and furnish the building, but concealed their joint operations from plaintiff, and that plaintiff did not learn of the fraud and deception perpetrated upon him until October, 1940. Concluding allegations are that since April 22, 1940, Oguss and Sher have mortgaged the property to secure an indebtedness of $100,000; that plaintiff is entitled to an accounting for this money; that the mortgage money was paid to defendants without knowledge of any fraud or deception, and that the lenders have a *bona fide* lien therefor on the property. The only relief sought by plaintiff, in addition to an accounting, is that the documents transferring his interest in the property be decreed void, that his one-half interest be reconveyed, and that he be shown to be a beneficiary of the trust.

By his answer, Oguss denied the material allegations of plaintiff's complaint and, in particular, that any conspiracy existed or that any fraud or deception was practiced upon plaintiff; that he supplied any part of the $16,400 advanced by Sher, or that plaintiff owns any interest in the property. Oguss averred his willingness to proceed with completion of the building on the basis of original estimates, adding that, prior to entry of the tax decree, revised estimates disclosed an increased cost of $25,000, and that his decision to sell the property was based upon the inability of Cohen and himself to produce additional money. Answering further, Oguss stated that he intended to part with his interest until April 19 when Sher offered to finance completion of the building provided he, Oguss, remained in the venture. Oguss challenged plaintiff's claim upon the grounds, among others, that plaintiff breached his agreement with him, Oguss, by assigning a

half interest to Engert; that he waited until completion of the building and furnishings before filing his complaint, and that he was guilty of *laches*. Sher's answer is substantially to the same effect. This defendant averred that at no time did he represent to plaintiff he was acquiring the interest of Oguss, but, instead, that the conveyance to him, Sher, was made in accordance with plaintiff's idea to transfer to a *bona fide* holder, and that the bank and all parties acquiesced in order to avoid objections on the part of a title company arising out of the tax litigation. Engert disclaimed any interest in the property, in the accounting or in any money decree.

The chancellor dismissed the amended complaint for the want of equity. Plaintiff appeals directly to this court upon the theory a freehold is involved.

Plaintiff's complaint is predicated on the proposition that he and defendant Oguss were engaged in a joint venture; that they were coadventurers or partners between whom a fiduciary relationship existed; that his coadventurer or partner abused the relationship, thereby imposing upon himself, as well as a stranger, namely, Sher, who joined with him in overreaching plaintiff, the duty of rebutting the presumption against the validity of the transaction assailed. The relief sought in the trial court does not directly involve a freehold. In particular, plaintiff asked that all documents and instruments by which the property was transferred be adjudged nullities and cancelled; that a one-half interest be reconveyed to him, subject to charges lawfully assessable against the respective interests; that two defendants, Oguss and Sher, be decreed trustees *de son tort* from April 22, 1940, to the date of the decree and that the decree declare him, plaintiff, a beneficiary of the trust. An accounting was also sought. The decree of December 11, 1942, dismissing the amended complaint for the want of equity does not disturb the title to the real estate which remains in the defendant bank, as

trustee. Plaintiff urges twenty-eight errors as grounds for reversal of the decree. The gist of the errors charged is that the chancellor should have found a fiduciary relationship existed between plaintiff and Oguss and that the former was entitled to restoration of the one-half interest in the *corpus* of trust No. 2865 which he originally owned. Neither the errors relied upon nor the supporting argument suggest that a freehold is either directly or incidentally involved.

A freehold is involved where either the necessary result of the judgment or decree is that one party gains and the other loses a freehold estate, or where the title to a freehold is so put in issue by the pleadings that the determination of the case necessarily requires a decision with respect to the ownership of the real estate in controversy. For this court to entertain jurisdiction of a direct appeal upon the ground that a freehold is involved, the freehold must be directly, and not collaterally, contingently or incidentally involved. (*Knight* v. *Gregory,* 378 Ill. 565; *Harper* v. *Sallee,* 372 Ill. 199; *Swinson* v. *Sodaman,* 369 Ill. 442; *Kagy* v. *Luke,* 357 Ill. 512; *Schmitt* v. *Wright,* 357 Ill. 509.) A freehold is never involved, within the contemplation of section 75 of the Civil Practice Act, (Ill. Rev. Stat. 1943, chap. 110, par. 199,) except where the primary object of the action is the recovery of the freehold estate, the title to which is directly put in issue. (*Wylie* v. *O'Connor,* 363 Ill. 615.) The word "freehold," as employed in the Civil Practice Act to give this court jurisdiction on direct appeal, does not include the mere right to do that which in equity would entitle a party to a freehold. (*Taylorville Savings Loan and Building Ass'n* v. *McBride,* 369 Ill. 544.) Nor does the fact that a party seeks to put the title to land in issue by his complaint require this court to take jurisdiction, if a decree, upon the proper pleadings in the case, may be entered without affecting the freehold. (*Johnson* v. *Hefferan,* 365 Ill. 359.)

Again, where a freehold is involved in the original degree but not in the questions to be determined on the appeal, this court has no jurisdiction and the appeal must be taken to the Appellate Court. (*Frey* v. *Schaab,* 379 Ill. 315; *Carney* v. *Quinn,* 358 Ill. 446; *Schrader* v. *Schrader,* 357 Ill. 623; *Hutchinson* v. *Spoehr,* 221 Ill. 312; *Douglas Park Building Ass'n* v. *Roberts,* 218 Ill. 454.) Here, the question of title, if any, is only incidental or collateral to the restoration of plaintiff's one-half interest in trust No. 2865. Indeed, plaintiff's complaint did not ask that he be decreed to have an interest in real estate nor that defendants, and in particular, the bank, be ordered to convey it to him. His complaint was based on the theory that he and defendant Oguss were engaged in a joint venture or partnership enterprise, that his coadventurer or partner had violated the confidential or fiduciary relationship obtaining between them, and that he was, accordingly, entitled to be restored to his original position as a beneficiary of a trust and to an accounting. If the decree sought were entered plaintiff would not gain and defendants would not lose a freehold, and the title to the real estate is in no way put in issue by the pleadings. (*Duncanson* v. *Lill,* 322 Ill. 528.) A reversal of the decree would result in a finding that plaintiff was entitled to a beneficial interest in one half of the trust property, designated personal property by the terms of the trust agreement. As pertinently observed in *Davis* v. *Oliver,* 371 Ill. 287: "A freehold is not involved where it appears the title to all the real estate in question is vested in another, under a trust agreement, as a successful appeal by the appellant would not take the title away from the trustee, as that would, of necessity, depend upon the terms of the trust."

For the reason that a freehold was not involved in the trial court and the errors relied upon for reversal do not present the question of a freehold in this court, the cause is transferred to the Appellate Court for the First District.

*Cause transferred.*