(No. 29080.—)

ELMORE REAL ESTATE IMPROVEMENT COMPANY, Appellant,
*vs.* NORMAN L. OLSON *et al.,* Appellees.

*Opinion filed November 21, 1945.*

HERSHENSON & HERSHENSON, and JAMES B. McKEON,
both of Chicago, for appellant.

ASHCRAFT & ASHCRAFT (ALAN E. ASHCRAFT, JR., of
counsel,) both of Chicago, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiff, Elmore Real Estate Improvement Company, a
corporation, filed its complaint in the circuit court of Cook
county against defendants, Norman L. Olson, individually
and as successor-trustee, Clifford M. Leonard and Leonard
Construction Company, (formerly known as Leonard Com-
pany.) The complaint seeks specific performance, or, in
the alternative, damages at law for breach, of a real-estate

contract dated April 21, 1939, and a supplemental contract dated April 22, 1939, entered into between plaintiff and the trustee. Norman L. Olson, individually, but not as trustee, was subsequently dismissed as a defendant. A motion to require plaintiff to elect, on the ground that specific performance and damages constituted inconsistent remedies, was overruled, with leave granted to renew the motion at any later stage, of the proceedings if it should appear that continuance of the action in the alternative without election resulted in a legal detriment to defendants. The motion was not renewed. The original complaint, as amended, and, in turn, a second amended complaint, were stricken, with leave to plead further. Finally, on motion of defendants, the present, or third, amended complaint was stricken and the cause dismissed for the want of equity. Plaintiff prosecutes a direct appeal to this court on the theory a freehold is necessarily involved.

From the pleadings it appears that although dated April 21 and 22, 1939, the contracts did not become effective until June 15, 1939. Both were executed by Olson solely in his representative capacity as successor-trustee, and it was expressly understood that nothing contained in the agreements would be construed as creating any liability on him personally to perform any agreement or covenant, either express or implied. By the provisions of the agreement of April 21, 1939, plaintiff was granted exclusive right of sale, at specified minimum prices, of lots and tracts in Biltmore Country Estates and Signal Hill subdivisions, two subdivisions located in Lake county to which title was held by Olson, as trustee. The sole beneficiary of the trust was Leonard Construction Company. All the shares of stock of the latter company were owned by Clifford M. Leonard. The provisions of many of the twenty-six clauses of the agreement are not in controversy. Under the contract Olson, as trustee, was not obligated to pay out any money to plaintiff for service or commission charges, on

property sold by plaintiff, but was entitled to receive sixty per cent, net, of the proceeds of each sale of lots and tracts in Biltmore Country Estates and seventy-five per cent, net, of the proceeds of each sale of tracts in Signal Hill subdivision. Conversely, plaintiff's sole right to service and commission charges, payable solely out of the proceeds of sales, was to retain forty per cent and twenty-five per cent, respectively, of the agreed purchase price of lots in Biltmore Country Estates and Signal Hill subdivisions. The contract further provided that if the trustee should receive in cash within five years from the date of the contract, $156,000, as proceeds of sales of lots and tracts in the Biltmore Country Estates, and $40,000, as proceeds of sales of tracts in the Signal Hill subdivision, then the interest of the trustee in those subdivisions should cease, and the trustee would be required to convey and quitclaim to plaintiff title to all lots and tracts unsold in both subdivisions, and to assign to plaintiff all interest of the trustee in and to outstanding purchase contracts and all moneys due thereunder. Plaintiff, in turn, was then required to assume and fulfill all obligations and duties imposed upon the trustee in all contracts of purchase so assigned. It was further provided by the contract that plaintiff agreed to exert its best efforts to make sales of lots and tracts in the two subdivisions to the extent of $60,000 for each year the contract was in force, and that "in the event that Elmore (plaintiff) does not make sales to the extent of Sixty Thousand Dollars ($60,000.00) within one year after the date hereof and likewise make sales to the extent of Sixty Thousand Dollars ($60,000.00) in each year thereafter, either party hereto may cancel this Agreement, upon giving sixty (60) days' prior written notice to the other party." The supplemental contract, dated April 22, 1939, merely included other parcels of vacant real estate to be conveyed to plaintiff as additional compensation upon suc-

cessful completion by it of the terms and provisions of the principal contract, dated April 21, 1939.

It is substantially undisputed that plaintiff made sales of lots and tracts, approved and accepted by the trustee, in aggregate amounts, respectively, of $84,000 for the first period ending June 15, 1940, $54,675 for the second period ending June 15, 1941, and $46,920 for the third period ending June 15, 1942; and that the amount of sales for the first period constituted a compliance with the terms and provisions of the contract. With respect to the sales for the second and third years, it is alleged in the complaint that, although less than the $60,000 annual requirement, all of the sales contracts for these two years were accepted by the trustee; that the trustee waived strict performance by failing to cancel the agreement pursuant to its terms; and that, on the contrary, he, the trustee, continued to treat the agreement in full force and effect, by continuing to accept and execute contracts obtained by plaintiffs from purchasers.

The present controversy arises out of the actions of the parties in the fourth period of the contract, namely, the year ending June 15, 1943. The trustee, on May 28, 1943, eighteen days prior to the expiration of this fourth period, served a notice upon plaintiff, in part to the effect that he elected, in accordance with the terms and provisions of the contract, to terminate and cancel the agreement sixty days from the date of the notice, for failure on the part of plaintiff to make sales as provided by the agreement. He concluded the notice by stating that plaintiff "defaulted in sales for the year ending June 15, 1941, and again for the year ending June 15, 1942, and it does not appear that you will be able to make sufficient bona fide sales this year based on sales to date."

The complaint alleges that the termination notice was served in bad faith and with an unlawful intent and design

50

to discourage plaintiff in its efforts to dispose of real estate in an amount sufficient to comply with the terms of the contract, that the trustee breached the contract by refusing longer to be bound thereby, and that the letter of May 28, 1943, constituted notice to plaintiff to this effect. Additional allegations are that during the fourth year, ending June 15, 1943, plaintiff procured contracts from purchasers ready, able and willing to purchase lots and tracts totaling $74,599, at prices fixed by defendants; that contracts involving $36,649 were accepted and executed by the trustee; that plaintiff did not agree to the cancellation of the contract, and continued to perform its part by selling, between May 28, 1943, and June 11, 1943, to customers ready, able and willing, lots of the aggregate contract value of $37,950, all of which were rejected by defendant trustee, who refused to approve and execute them, "thus preventing plaintiff from complying with the terms of the contract, so as to deliver $60,000 in sales contracts for the fourth year ending June 15, 1943," and that because of defendants' action, plaintiff has not been able to continue selling, and will be unable so to do unless defendants are ordered to execute these contracts, in the aggregate sum of $37,950, and subsequent contracts tendered by plaintiff, signed by customers ready, able and willing to purchase under the terms required by the agreement. Plaintiff further charges that in addition to the $37,950 rejected contracts, it actually sold to *bona fide* purchasers lots and tracts in the subdivisions and delivered to defendants, for the four years, contracts in the sum of $260,194; that after deducting amounts, in accordance with the terms of the contract, it has remitted to defendants a sum of $105,761.63, accepted and retained by defendants, and that all told, including moneys accepted and tendered to defendants, as well as the sum returned by the trustees with rejected contracts, the defendants received in cash, $109,546.63.

Plaintiff alleges it is ready, able and willing to perform both agreements according to their terms, and to pay to defendants, in exchange for the assignment of balances due on installment contracts such sum of money as may represent the difference between the amount actually received, and the $196,000 net which will be due to defendant according to the terms of the contract, and prays that defendants be decreed specifically to perform both agreements according to their terms; to sign and execute contracts of sale and deeds to the real estate, when purchase prices have been paid, and that when defendants have received $156,000 and $40,000, net, respectively, to them from sales of lots and tracts in Biltmore Country Estates and Signal Hill subdivisions he, the trustee, be required to convey and quitclaim to plaintiff (1) all the tracts and lots involved, excepting lots and tracts already conveyed to purchasers, and (2) to assign and deliver to plaintiff all interest of the trustee in and to purchase contracts, and all money due thereunder, covering lots and contracts so conveyed to plaintiff, subject to assumption by plaintiff of all obligations and duties imposed upon the trustee. In the alternative, the relief sought is that defendants be directed to pay to plaintiff damages by reason of their refusal to sign and execute contracts of purchase delivered to them resulting in loss of compensation and future benefits and compensation under the contract, over and above $156,000 and $40,000, net, respectively, together with assignments of balances due on contracts, over and above $196,000 net, and that plaintiff be decreed the value of the real estate described in the supplemental contract, dated April 22, 1939, being the amount it would be entitled to in the future, after deducting $196,000, net. Finally, plaintiff asks that any judgment for damages awarded to it be declared a lien upon the balance of the real estate in the trust, remaining unsold at the time of filing its complaint; that unless the

judgment is paid within the time ordered by the court the real estate be sold under the direction of the court, and that a master in chancery be appointed for this purpose and for the purpose of executing proper certificates of sale and deeds to the purchaser or purchasers.

Initially to be determined is whether the cause is properly before this court upon direct appeal. In all, seven assignments of error are relied upon for reversal. None of these is based solely upon any claimed error of the chancellor in denying specific performance. In the fourth, it is urged that the court deprived plaintiff of all remedy, by not granting plaintiff *either* the right to specific performance *or* the right to damages for breach of contract, and the chancellor's action, in failing to grant a remedy is characterized as, in effect, declaring the contract to be a *nudum pactum*. A freehold is not involved so as to afford jurisdiction on direct appeal unless the necessary result of the judgment or decree is that one party gains and the other loses a freehold estate, or the title to a freehold is so put in issue that a decision of the case necessarily involves a decision of such issues. (*Browning* v. *Browning,* 379 Ill. 29; *Wright* v. *Logan,* 364 Ill. 33.) For a direct appeal to be entertained upon the ground a freehold is involved, the freehold must be directly, and not collaterally, contingently or incidentally, involved. (*Cohen* v. *Oguss,* 384 Ill. 353.) A mere attempt to put title to land in issue by a complaint does not require this court to take jurisdiction of an appeal, if a decree, upon proper pleadings, may be entered without affecting a freehold. (*Cohen* v. *Oguss,* 384 Ill. 353; *Johnson* v. *Hefferan,* 365 Ill. 359.) The principal questions here presented involve the construction of the contract between plaintiff and defendant. An examination of the agreement discloses that plaintiff was selling lots on commission, the deeds to the parcels sold running directly to the purchasers of the property. Upon failure of the trustee to live up to the contract, the court could grant relief

either by way of specific performance, or, as requested by plaintiff's successive pleadings, award him money damages. According to plaintiff's own allegations, it would be completely satisfied by the payment of .money, pursuant to a judgment which plaintiff sought to have declared a lien upon the real and personal property involved. A freehold, it follows, is not necessarily involved, but, if involved at all, is only incidental. This is insufficient to confer jurisdiction upon this court. (*Moulopoulos* v. *Northern Trust Co.* 384 Ill. 41.) Again, a freehold is not involved in a complaint seeking to have declared and enforced a lien on realty for the payment of money. (*Ellis* v. *Righter,* 351 Ill. 545; *Christie* v. *Brouillette,* 350 Ill. 60.) Under the circumstances, no proper basis is presented upon which to authorize jurisdiction of this court upon a direct appeal.

The cause is transferred to the Appellate Court for the First District.

*Cause transferred.*