(No. 30554.—

FRED STEIN et al., Appellants, vs. EAST OAK STREET HOTEL
Co. et al., Appellees.

Opinion filed ·May 20, 1948.

SHULMAN, SHULMAN & ABRAMS, (MEYER ABRAMS, of
counsel,) both of Chicago, for appellants.

GROVER D. ROSE, and DEMING, JARRETT & MULFINGER,
both of Chicago, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

This action was commenced in the circuit court of Cook
County for the alleged purpose of obtaining specific ·per-
formance of a contract for the sale of real estate and for
other important relief. The plaintiffs are Edward E. Glatt
and his agent, Fred Stein, and Nathan B. Lans. Only
Glatt and Lans are shareholders of the East Oak Street

Hotel Company, the corporate defendant. The individual defendants, Delbert M. Ruggles, Clarence Pullum and Edwin J. Elting, constitute the entire board of directors of the hotel company. In addition, Ruggles and Elting are, respectively, president and secretary of the corporation. The cause was heard before the chancellor and, at the close of plaintiffs' case, on motion duly made, a decree was entered dismissing the complaint for the want of equity. Upon the theory that a freehold is directly involved, plaintiffs have prosecuted a direct appeal to this court.

Regardless of the fact that defendants do not question the jurisdiction of this court, the first question requiring consideration is whether a freehold is involved, within the contemplation of section 75 of the Civil Practice Act. (Ill. Rev. Stat. 1947, chap. 110, par. 199.) The record discloses that, on August 1, 1946, the directors addressed a communication to the shareholders stating, in view of increasing costs and stabilized rentals, they were seriously considering the advisability of selling all the assets of the corporation. The letter added that a special meeting of the shareholders would be called to consider the matter if it appeared that a favorable offer could be obtained. On September 5, 1946, by resolution of the board of directors, a procedure was established for conducting the proposed sale. A bank was appointed as agent to receive offers, and bids were required to be made on special forms supplied by the corporation and accompanied by a deposit of $50,000. Successive bids could be made but only when $15,000 greater than the last highest bid, and the bidding was to remain open until 12:00 noon, October 10, 1946. The forms of bids prepared by the corporation contained four pages of single-spaced typing. Among the multitude of terms and provisions was the information that, under the law of Delaware, the State of incorporation, it would be necessary for the shareholders to approve the sale. The

form further specified that the corporation could accept the offer at any time prior to October 20, 1946, by notice to the offerer, and that there would be no acceptance at any time, or under any circumstances, unless and until specific written acceptance of the terms of the offer be communicated by the corporation to the offerer.

On the same day, September 5, 1946, the corporation mailed notices of a special meeting of the shareholders called for September 30, 1946, for the purpose of voting on the proposed sale. An outline of the plan for obtaining competitive bids and the directors' solicitation of proxies were included in the notices. It further appears that the proxies expressly permitted the proxyholders to approve or disapprove any proposed sale.

Subsequently, on September 16, Stein, Glatt's agent, executed a formal offer, in his own name, to purchase the property for $975,000. At the time of the shareholders' meeting on September 30, this was the highest bid received. The meeting was adjourned to October 18, however, in view of the possibility of higher bids being received prior to 12:00 noon on October 10. Elting, the secretary, notified all shareholders of the action taken at the first meeting and expressed the directors' hope of obtaining an offer yielding between $25 and $30 a share. After receiving notice of higher bids, Stein executed another formal offer for $1,140,000 just before the bidding closed on October 10, and he was declared to be the highest bidder. Elting again wrote to the shareholders telling of the bid for $1,140,000, calculating that, if accepted, it would yield approximately $27 per share and announcing that this offer would be submitted for approval at the adjourned special meeting on October 18.

At a directors' meeting on October 18, immediately preceding the shareholders' meeting, the individual defendants voted to sell the property for $1,140,000. At the shareholders' meeting, it developed that a new and higher bid

was in the offing and the meeting was recessed temporarily. During the recess, Ira Shapiro deposited a check for $50,000 and executed a bid for $1,155,000, the offer to remain open until October 31, 1946. Upon reopening the meeting, a resolution was adopted accepting the bid of $1,155,000. By a second resolution, the bid of $1,140,000 was rejected. Of the 16,000 shares outstanding and the 10,000 or so represented at the meeting, the directors held proxies for approximately 7,700 shares and were thus in complete control of the voting. Following the close of the shareholders' meeting, the directors met again and passed a resolution authorizing the president of the corporation to negotiate a contract for the sale of the real estate at a price of not less than $1,155,000. Later the same day, Ruggles, as president of the hotel company, gave Stein written notice of the rejection of his bid and returned his deposit of $50,000, conditioned upon his waiver of all claims against the corporation. On October 19, Stein refused to accept the return of his deposit and instituted the present action against the corporation and its directors.

Thereafter, the directors refused to accept Shapiro's bid for $1,155,000. Although the reason advanced was that Stein's action constituted a cloud on the title to the real estate, counsel for the corporation advised that the action was without merit. The directors took the view that the time for acceptance of Shapiro's offer expired on October 31, and the following day his deposit of $50,000 was returned to him. Asserting that he had a binding contract, Shapiro sent his deposit back to the corporation. After informing Shapiro that no contractual relationship existed, the officers of the corporation sought to induce Shapiro to take the property, subject to the present litigation for the same price of $1,155,000. On December 17, Shapiro refused to accede to the conditions imposed and negotiations were broken off. It was not until some undisclosed date after February 1, 1947, that Shapiro finally

consented to accept the return of his deposit. The record further discloses that as of December 31, 1946, the defendant corporation paid $14,625 for legal fees and other expenses in connection with the proposed sale of the property and that no negotiations for a sale were then in progress.

On February 15, 1947, the defendant directors called the annual shareholders' meeting for March 4 and solicited proxies for their reelection as directors and for ratification of the original resolution to sell all the corporate assets for $1,155,000. As shareholders of record, plaintiffs Glatt and Lans made a demand on the defendants for access to the names and addresses of all shareholders in order to solicit opposition proxies and to present their side of the pending litigation. The request was refused. At the meeting on March 4, the plaintiffs asserted that the individual defendants were ineligible to any office, this being the penalty under Delaware law for the refusal of directors to make the list of shareholders available for examination at any time during the ten-day period prior to an election. Plaintiffs were ruled out of order and, over their protests, the individual defendants, through the use of proxies, re-elected themselves directors and adopted a resolution giving the directors the power to sell the corporate assets for $1,155,000.

So far as relevant to the present inquiry, plaintiffs sought a decree adjudging (1) that it was the duty of the individual defendants at the shareholders' meeting on October 18, 1946, to vote their proxies in favor of the sale to Stein and that they breached both their contractual and trust duties in voting against the sale to him; (2) that if, however, the court should determine defendants had a right to reject Stein's bid, then it was their duty to consummate the deal with Shapiro for $1,155,000, and that they violated their trust when they returned his deposit of $50,000 and expended over $14,000 in fees and

expenses, and should be held liable for these sums, (3) or, in the alternative, that, by reason of the affirmative vote of both the shareholders and directors, no further vote was necessary to make a sale and, in the event the court should deny plaintiffs' prayer for specific performance, the property should be sold in court to the highest cash bidder at a price of not less than $1,140,000, and that the defendants be held personally liable for the difference if the property be sold at less than $1,155,000. Other relief sought was a declaration that defendants were not eligible to hold office and that the election of March 4, 1947, was void, an order granting plaintiffs access to the list of shareholders, and the appointment of a receiver. Subsequently, plaintiffs were permitted to add an amendment to their amended complaint to make the allegations conform with the proof adduced. During the trial, Glatt, Stein's principal, raised his bid to $1,155,000 and announced that, if the court would not grant specific performance on the basis of the increased bid, he would guarantee a bid of $1,155,000 if the court would direct a competitive sale to be held not later than December 30, 1947. The additional relief sought was the entry of a decree directing that the property be sold to Glatt for $1,155,000 or, in the alternative, that the property be sold in open court prior to December 30, 1947.

In support of their contention that this court has jurisdiction to determine the present controversy, plaintiffs invoke the familiar rule that a freehold is involved either where the necessary result of the judgment or decree is that one party gains and the other loses a freehold estate, or where the title to a freehold is so put in issue by the pleadings that the disposition of the cause necessarily involves a decision with respect to the ownership of the real estate in controversy. (*Elmore Real Estate Improvement Co.* v. *Olson,* 392 Ill. 46; *Campo* v. *Grunewald,* 391 Ill. 91.) Since neither party gained or lost a freehold by reason of the decree of the circuit court, plaintiffs can only

rely on the latter part of the rule. In this connection, plaintiffs assert that the pleadings necessarily involve a determination with respect to the title to the hotel property because the relief sought by the prayer of the complaint includes specific performance and, in the alternative, a judicial sale of the premises. As we view plaintiffs' pleadings, the gist of the complaint lies in the allegation that, at the shareholders' meeting held on October 18, 1946, the individual defendants wrongfully voted their proxies in rejection of Stein's bid for $1,140,000. A decision on this issue does not involve a freehold. A decree adjudging that the directors, as proxyholders, had violated the fiduciary duty owed to their principals, the shareholders, would not result in the gain or loss of a freehold estate. This matter relates only to the internal management of the corporation. Thus, as concerns the principal issue formed by the pleadings, plaintiffs sue not as purchasers from the hotel company but only as shareholders in the corporation. If a freehold is involved in the litigation at all, it does not meet the prerequisite of being directly and necessarily involved. *Aubry* v. *Supreme Liberty Life Ins. Co.* 395 Ill. 584; *Swinson* v. *Sodaman,* 369 Ill. 442.

Furthermore, plaintiffs' mere designation of the action as being one for specific performance is ineffectual to confer jurisdiction on this court. The complaint is without any allegation as to the existence of a contract for the sale of land between Stein and the hotel company. All that is shown is a rejected offer and it is difficult to perceive how a mere offer can be specifically enforced. As a matter of fact, the complaint does not contain an express request for a decree of specific performance. The most that plaintiffs charge is that the directors breached both their contractual and fiduciary duties in voting against the sale to Stein. Whether the alleged contractual duties referred to are obligations to the shareholders who executed proxies, or obligations to Stein and Glatt on the bid for $1,140,000,

is left to speculation. Throughout the remainder of the complaint all pertinent requests for relief make the negative assumption that no decree for specific performance will issue. The issue of a freehold could only come into existence if the shareholders voted to approve a sale for $1,140,000 and if the corporation then communicated to Stein an acceptance of his offer. Since neither of these events occurred, a freehold is not even remotely involved by the claim for specific performance. And while it is true, as plaintiffs point out, that the merit of a claim involving a freehold is immaterial in determining jurisdiction, it is equally true that an unmeritorious allegation involving a freehold estate cannot be added to a cause of action based on other grounds in order to advance the cause by a direct appeal to this court.

Of striking similarity to the case at bar is *Neill* v. *Kimball*, 387 Ill. 58. There, Finder, high bidder at a judicial sale, protested the acceptance of an equal bid made by Yampolsky. In meeting Finder's bid, Yampolsky exercised a privilege given to him under the terms of his earlier and lower bid. Finder intervened in the proceedings and his petition was dismissed for the want of equity. Upon a direct appeal, we held that no freehold was involved because the principal issue made by the pleadings concerned the validity of Yampolsky's equal bid, and granting the relief sought would not result in either bidder gaining or losing a freehold but would merely afford Finder the right to fulfill his bid. The cause was transferred. The situation in the case at bar is parallel. So far as relevant to the question of freehold, the gist of plaintiffs' action is that the individual directors wrongfully voted their proxies to approve Shapiro's bid and reject Stein's lower bid. Further, a decree adverse to the directors on this issue would not result either in the gain or loss of a freehold, but would merely establish the duty of the directors to authorize the officers of the corporation to enter into a contract with

Stein by communicating an acceptance of his offer to him. The cases are not distinguishable and we regard the decision in *Neill* v.˙*Kimball* as controlling. Plaintiffs do not request the specific performance of a contract for the sale of land. Nowhere do they allege the existence of a contract. The bare fact is that plaintiffs are asking for the specific acceptance of an offer which has been rejected.

The cause is transferred to the Appellate Court for the First District.

*Cause transferred.*