(No. 25262.—

EDWARD HARPER, Appellee, *vs.* LULA MAY SALLEE, Appellant.

*Opinion filed October 13, 1939.*

Mann & Stifler, and Asa S. Chapman, for appellant.

Rearick & Rearick, for appellee.

Mr. Chief Justice Wilson delivered the opinion of the court:

So far as pertinent to the determination of whether a freehold is involved in this litigation, the facts disclosed by the pleadings and the evidence are as follows: On March 2, 1928, William L. Sallee and his wife, Lula May Sallee, executed their promissory note for $3000 payable to the order of the Trevett-Mattis Banking Company five years after May 1, 1928, and secured its payment by a mortgage on seventy-two acres of land in Vermilion county. The note and mortgage were assigned to the Mutual Benefit Life Insurance Company of Newark, New Jersey, on May 11, 1928. Thereafter, the mortgagors conveyed the land to Jesse R. Stayton and, on January 3, 1931, Stayton and his wife conveyed an undivided two-thirds of the real estate to Sallee and an undivided one-third to his wife. A month later, on February 2, 1931, William Sallee and his son, Alva, executed a note for $6885.25, payable to the order of the Farmers State Bank, Rossville, Indiana, due September 2, 1932, and secured its payment by a second mortgage on Sallee's undivided two-thirds interest in the seventy-two acre tract. Mrs. Sallee did not sign this note and joined in

the mortgage merely to release her dower. September 2, 1931, Sallee died testate. By his will he devised and bequeathed his entire estate to his wife and named her executrix. The widow, Lula May Sallee, then owned the entire tract, all of which was encumbered by the first mortgage for $3000 and two-thirds by the junior mortgage for $6885.25. After Sallee's death, default was made in the payment of principal and interest on both notes. July 13, 1935, the insurance company, assignee of the first mortgage, instituted its foreclosure proceeding in the circuit court of Vermilion county. The Farmers State Bank and its liquidator, who were made parties to the suit, answered and filed a counter-claim seeking foreclosure of the junior mortgage. By the decree rendered on November 23, 1935, $3272.15 was found owing to the insurance company and $9203.96 due on the second mortgage indebtedness. A sale pursuant to the decree was held on January 6, 1936. The company purchased the premises for $3000 and received a certificate of purchase. A separate decree, on March 17, 1936, foreclosing the second mortgage recited that this encumbrance was subject to the lien of the first mortgage. On January 4, 1937, Edward Harper purchased the second mortgage and the interest of the mortgagee under the decree entered on the junior mortgage. The last day of the twelve months subsequent to the sale of the mortgaged property, namely, January 5, 1937, Harper, as assignee under the junior mortgage, paid $3180, the correct amount of the redemption money, to the master in chancery, and received a certificate of redemption. The insurance company surrendered the certificate of purchase and accepted the redemption money. Harper entered into possession of the entire tract on March 1, 1937. After the expiration of the fifteen-month period of redemption the plaintiff, Harper, on May 18, 1937, filed his complaint in the circuit court of Vermilion county against the defendant, Lula May Sallee. Upon the

basis of the facts narrated an order was sought declaring that plaintiff, as assignee of the party holding the junior mortgage, had succeeded to all the rights of the purchaser at the foreclosure sale and directing the master to execute and deliver to him, on surrender of the redemption certificate, a deed to the premises or, in the alternative, a decree to the effect that by payment of the redemption money he acquired a lien against the interest of the defendant in the farm entitling him to reimbursement of one-third of the redemption money. Defendant answered and, conformably to leave granted, filed a counter-claim praying, as did her answer, to be restored to possession of the premises and demanding an accounting from plaintiff of all rents collected by him from the premises. The chancellor found that the sale under the foreclosure decree covered all interests in the property; that as to the two-thirds, plaintiff's redemption did not nullify the legal effect of the sale, that he, plaintiff, was subrogated to the rights of the purchaser, and, there having been no further redemption, entitled to a master's deed covering the interest specified; that as to the one-third, plaintiff's redemption did not destroy defendant's equity of redemption, and she, not being personally liable for the second mortgage indebtedness, was entitled to her one-third, provided she make contribution by paying one-third of the redemption money. By making redemption, the chancellor further found that plaintiff relieved defendant's one-third interest of an indebtedness for which she was personally liable, thereby entitling him to an equitable lien equal to the lien of the mortgage on her undivided one-third interest which he removed. Accordingly, the decree adjudged that plaintiff, by subrogation, was entitled to an undivided two-thirds interest in the property, and that the defendant owned an undivided one-third interest, subject to a lien in favor of plaintiff for one-third of the redemption money, with interest at the rate of five per cent per annum from the date of payment by him, subject to a

credit or set-off representing one-third of the net amount of rents collected. The decree also directed the master to issue to plaintiff a deed to the two-thirds interest, upon surrender of the certificate of redemption and, further, ordered defendant to pay to plaintiff within thirty days one-third of the redemption money, less a credit for rents, and, in default of such payment, a sale of her one-third interest. Defendant appeals directly to this court and plaintiff has prosecuted a cross-appeal from the portion of the decree adverse to him.

A freehold is involved where either the necessary result of the judgment or decree is that one party gains and the other loses a freehold estate, or where the title to a freehold is so put in issue by the pleadings that the determination of the case necessarily requires a decision with respect to the ownership of the real estate in controversy. (*Swinson* v. *Sodaman,* 369 Ill. 442; *Wright* v. *Logan,* 364 id. 33; *Lennartz* v. *Boddie,* 304 id. 484; *Burroughs* v. *Kotz,* 226 id. 40.) For this court to entertain jurisdiction of a direct appeal upon the ground that a freehold is involved, the freehold must be directly, and not collaterally, contingently or incidentally involved. (*Kagy* v. *Luke,* 357 Ill. 512.) Here, the question of title, if any, is only incidental or collateral to the right to redeem from the foreclosure sale. Defendant makes the contentions, among others, that the redemption by plaintiff within one year nullified both the sale and the certificate of purchase, and that he, plaintiff, is a volunteer entitled neither to subrogation nor to contribution. The certificate of purchase received by the insurance company, the purchaser at the foreclosure sale, did not purport to convey title, but merely stated the amount of the bid and the time when the holder would be entitled to a master's deed if the premises were not redeemed. (*Bednarczyk* v. *Kudla,* 371 Ill. 533; *Williams* v. *Williston,* 315 id. 178.) As to the one-third interest of defendant in the property the challenged decree ordered a conveyance of her

interest to plaintiff only if she failed to pay him a specified sum of money within a designated time. The gain or loss of a freehold, it follows, is not the necessary result of this portion of the decree rendered but is dependent upon the subsequent action or inaction of the defendant. *Swinson v. Sodaman, supra.*

The cause is transferred to the Appellate Court for the Third district.

*Cause transferred.*