(No. 28084.—

CHICAGO TITLE AND TRUST COMPANY, Trustee, *et al.,* Appellees, *vs.* WABASH-RANDOLPH CORPORATION *et al.,* Appellants.

*Opinion filed November 22, 1944.*

WILSON & McILVAINE, and ALLEN G. MILLS, (J. F. DAMMANN, and CLARENCE E. FOX, of counsel,) all of Chicago, for appellants.

MARKHEIM, HUNGERFORD & SOLLO, (HARRY MARK-HEIM, of counsel,) both of Chicago, for appellees.

Mr. CHIEF JUSTICE FULTON delivered the opinion of the court:

This suit was before the court on a previous appeal in which an opinion was filed on September 21, 1943. Rehearing was denied and the case is reported in 384 Ill. 78. There the decree of the superior court of Cook county was reversed and the cause remanded with directions to proceed in accordance with the views expressed by this court. The facts were fully and completely stated in detail in that opinion and will only be repeated here insofar as they are material to this appeal.

In the former appeal this court held that a ten-foot alleyway across the rear of property owned by appellants constituted an easement by reason of contract and that the same had never been abandoned.

The situation presented by the facts shows that the property involved contained three lots at the northeast corner of Wabash avenue and Randolph street in the city of Chicago. They were numbered in consecutive order

lots 1, 2 and 3, starting at Randolph street and going north. The appellees were plaintiffs and the owners of lot 3 and another lot called the north lot immediately north of lot 3. The appellants were defendants and the owners of lots 1 and 2. The lots ran east from Wabash avenue. A private alley ten feet in width extended across the rear of all of the lots. A stipulation in the case showed that for about twelve years prior to the time the appellants acquired the lease to lot 1, the south 38 feet of the east ten feet of said lot 1 had been enclosed and occupied by one Markie as a store for business purposes. He paid rentals to the owners of lots 1 and 2 for such space.

In 1923 an agreement was reached between one Cardwell, as the owner of lot 2, and A. Starr Best, Inc., as the owner of lot 1, providing that the south 38 feet of lot 1 should be enclosed under the terms of that agreement, one of the provisions of which was that Best, Inc., was to erect a new building within a fixed period. By subsequent agreements, the time for the erection of the new building was extended to May 1, 1938. It was evident from such agreements that the lease of the ten-foot passageway would terminate not later than the time when Best, Inc., was obligated to erect a new building under its 99-year lease. The ten-foot strip on north of the south 38 feet of lot 1 remained unobstructed.

The complaint originally filed sought a mandatory injunction to protect plaintiffs' rights in an easement to the ten-foot strip over defendants' property. The chancellor refused to grant an injunction, finding that plaintiffs' easement had never been validly created, and even if an easement had formerly existed, the plaintiffs had abandoned it by their own acts and were not entitled to equitable relief. This court overruled the chancellor on both points, reversed the decree and remanded the case, with instructions to enter a decree in accordance with the views expressed in its opinion.

The case was redocketed in the trial court and plaintiffs presented a decree directing the defendants to tear down the building obstructing the ten-foot strip or alleyway within 60 days. Appellants filed objections and motions to stay, alleging new facts. After a hearing, the chancellor overruled the objections, denied the motions and, by decree, fixed the period for performance at 90 days.

In appealing from that decree the appellants contend, first, that the 90-day provision is not in conformity with this court's opinion and that, based upon what was known as the Cardwell-Best oral agreement, the time for performance could not be prior to October 1, 1945. We do not find any expression in our former opinion which warrants that assumption. This court plainly stated that "By subsequent agreements, the time for the erection of the new building had been extended to May 1, 1938." The oral agreement referred to concerned only the lease covering lots 1 and 2 and does not purport to have been made with the owners of the dominant premises and had no effect upon the easement agreement. No such affirmative relief was either claimed or asserted on the original trial of this cause.

It is next urged by the appellants that the appellees have lost possession and control of the dominant estate by foreclosure of a mortgage on their property, by appointment of a custodian to hold the property during the period of redemption, by sale of the property to satisfy the mortgage indebtedness and by failure to redeem the property during the greater portion of the period of redemption. It is stated in the appellants' brief, and the record shows, that the period of redemption terminated August 27, 1944, which was just one week after appellants' brief was filed.

The law is clear in Illinois that, during the period of redemption, appellees held the legal and equitable title to the dominant estate and the holder of the master's certificate of sale acquired no title to the land either legal

or equitable. (*Klein* v. *Mangan,* 369 Ill. 645; *Harper* v. *Sallee,* 372 Ill. 199.) Thus, it is apparent that the appellees retained the title until the period of redemption had actually expired. If no redemption had been made by the appellees in this case, the appellants, by means of a reply brief or by a motion to dismiss on the ground that the appellees had become divested of their interest in the subject matter of the litigation, would have properly directed this court's attention to that situation. The appellants further contend that the purchasers at the foreclosure sale should have been added or substituted as parties plaintiff in this cause, and that no injunction should be issued until their rights and the rights of the present plaintiffs have become fixed. Under the holding in *Klein* v. *Mangan,* 369 Ill. 645, the holder of a certificate of purchase acquires no title or vested interest, either legal or equitable, but acquires merely the right to receive a deed if the premises are not redeemed, and we do not deem the certificate holders necessary parties to this injunction suit. That case further holds that the owner of the equity of redemption has the same interest in the land both before and after the sale under a foreclosure decree. If redemption has not been made in the present case, it is strange that some attempt has not been made to so advise this court.

It is finally contended by the appellants that, by reason of regulations issued by the War Production Board having the force of law, it is unlawful and, therefore, impossible for defendant's to have the necessary work done to reopen the alleyway and, for that reason, the entry of the decree should be stayed or the time for performance postponed until it becomes possible for the defendants to perform it. The provision or regulation of the War Production Board referred to is regulation L-41 as follows: "(a) *What this order does.* This order limits construction. It is necessary in order to conserve materials, construction equipment, labor and transportation. In most cases, except where the

construction is of a special kind, you must get permission from the War Production Board for construction. * * *
(b) *What is meant by construction.* Construction covered by this order includes putting up or altering any sort of a structure, including a building, road, bridge, dam, sewer, and similar jobs; also the installing of equipment or fixtures. * * *"

The appellants introduced proof showing that the cost of the removal of the obstruction in the alleyway would exceed the sum of $3000, while it is the contention of the appellees that the cost of the work would not exceed the sum of $1000. However, there has been no showing in the record that permission would not be granted by the War Production Board for the work required to comply with this decree. If, in fact, regulation L-41 actually interfered with the performance of the mandatory injunction contained in the decree, it would have been perfectly possible for the appellants to secure relief upon application for an extension of time.

While this court does not wish to appear as obstructing any regulation of the War Production Board, we do not feel that the suggestion on the part of the appellants is material to the appeal in this case as disclosed by the record. We do not, in any manner, presume that the appellees would be permitted to do anything detrimental to the national welfare or that the trial court would approve of any such conduct. Based upon the decision of this court in 384 Ill. 78, and upon a close inspection of the record on this appeal, we feel that the decree of the trial court was properly and correctly entered and should be approved.

*Decree affirmed.*