(No. 31447.—

CLIFTON M. KIMBROUGH *et al.,* Appellees, *vs.* HARRISON PARKER *et al.,* Appellants.

*Opinion filed November 27, 1950.*

STEPHEN LEE, of Chicago, for appellants.

WILLIAM E. COLLINS, of Rockford, for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Appellees, five in number, filed a complaint in equity in the circuit court of Cook County, naming as defendants Harrison Parker, Puritan Church—The Church of America, and Jesse L. Stewart, doing business as J. L. Stewart Advertising Company. Parker and the Puritan Church now appeal directly to this court from a decree which granted relief adverse to them. It is apparent from the record that the alleged cause of action has not been pursued against Stewart since its inception, when he was made a party defendant.

The complaint, which originally consisted of two counts and was later amended by adding two additional counts, sets forth that on or about August, 1947, appellant, Parker, individually and as agent for the appellant, Puritan Church, entered into a promotional scheme involving an alleged puzzle contest; that such contest was to be publicized throughout the United States as "not for profit" but in such a manner that those desiring to enter would be solicited for "donations" to help build a meeting house for the Puritan Church; and, that in pursuance of the plan he caused an advertisement to be published in a Rockford, Illinois, newspaper, which set forth the puzzle to be solved, the terms and conditions of the contest, and a scale of prizes which were graded in proportion to the amount of the "donation" made by each of the successful contestants. The allegations continue that appellees responded to said advertisement and sent their solutions of the puzzle and cash donations to the Puritan Church at La Grange, Illinois; that shortly thereafter each received an identical mimeographed letter from

the church which acknowledged receipt of the solutions and donations, represented that their solutions were correct and that appellees might be entitled to larger amounts of prize money if their donations were increased; and that as a result of such letters appellees did increase their donations. Thereafter, numerous letters of inquiry by appellees, asking information as to the status of the contest and for the return of their money, were unanswered. It was alleged that appellees believed that the Puritan Church was not a *bona fide* religious corporation, but merely a cloak to conceal the fraudulent operations of Parker; that it was never intended that the contributions should be used to construct a meeting house, or for any other charitable purpose; that appellants had collected, from contestants residing in all parts of the country, a sum in excess of $700,000, a great portion of which had been dissipated and concealed by appellants.

The foregoing is, in substance, alleged generally in all four counts. The first count concluded with a prayer that appellants be restrained from proceeding further with the contest or from disposing of funds, and that judgments of $3500 be awarded each appellee for having correctly solved the contest puzzle. The second count asked for judgment of $700,000 in favor of all contestants, while the two remaining counts asked that a receiver be appointed by the court to marshal the assets of appellants for a later accounting and distribution to all contestants. Appellants filed a joint answer to the complaint as amended, and the cause was referred to a master.

As a result of his hearing, the master found that the Puritan Church—The Church of America, is an Illinois religious corporation with its only office at La Grange, Illinois; that Parker, individually and as agent for the church, entered into the promotional scheme as alleged; that appellees participated in the contest as set forth in the complaint; that in addition many thousands of solutions

and donations were sent by others to the church; and that only a small number of prizes were ever paid. It was further found that the church had no congregation or meeting place, or need of one, and that the organization's only office was located in rooms over a drugstore in La Grange. Included was a finding that the United States postal authorities had, on April 6, 1948, pursuant to complaints and investigation, impounded all mail directed to the church under a mail-fraud order, and that since that date appellants have been unable to mail any further information relative to the contest or its winners, even if such was their intention.

In regard to the donations accumulated by appellants, the master found that on January 30, 1948, three months before this complaint was filed, a sum of $230,574.25, which had been on deposit in the Farmer's State Bank of Montague, Michigan, in the names of Parker's wife and sister as trustees of the Puritan Church, had been withdrawn at Parker's direction; that approximately $108,000 thereof had been deposited in a Coscob, Connecticut, bank to the account of the Puritan Church Fund; and that a further sum of $69,000, which had been on deposit in the Michigan bank and credited to the general account of the Puritan Church, had been withdrawn and its whereabouts not disclosed by the evidence.

From all the evidence, the master concluded that the contest was a scheme to defraud contestants and personally enrich Parker and others connected with the promotion, and that appellees were not entitled to judgments of $3500 each, because of the impossibility of determining their rights as against the thousands of other contestants who had also submitted correct puzzle answers. He recommended that the monies obtained by appellants be impressed with a constructive trust for the benefit of all contestants, and that a receiver be appointed to marshal the assets and hold them for an accounting by the court.

The chancellor, after overruling appellants' exceptions to the master's report, adopted the report and made it a part of the decree, which directed: (1) That appellees could properly maintain the suit as representatives of a class consisting of numerous persons living throughout the United States; (2) that judgment enter against appellants in the sum of $230,574.26 in favor of all contributors to the contest, as their interests may appear; (3) that the sums collected by appellants be impressed with a constructive trust for the benefit of all contestants: (4) that James E. Kennedy be appointed receiver "of all assets, property, monies, debts and effects of every nature and kind" belonging to appellants; (5) that appellants turn over to the receiver all monies, property and assets obtained by them from the contestants; (6) that appellants be enjoined from further collecting any debts, demands or claims arising out of the contest; and (7) that the receiver give notice to all contestants to file claims, and make distribution and proceed further subject to orders of the court.

In considering the appeal from this decree, we are first met with the question of this court's jurisdiction to hear and consider, on direct appeal, the matters raised. While appellants do not specifically seek to justify a direct appeal, the first error assigned is that they were denied due process of law as guaranteed by section 2 of article II of the Illinois constitution when the trial court held this to be a class suit, entered judgment for the class and sequestered funds in its behalf. If this ground is construed as giving this court jurisdiction of a direct appeal, appellants are in error in that regard. To give this court such jurisdiction on the ground that a constitutional question is involved, it must appear that a fairly debatable constitutional question was urged in the trial court, that the ruling thereon is preserved in the record for review, and error assigned on such ruling in this court. (*Economy Dairy Co.* v. *Kerner,* 371 Ill. 261; *McIlvaine* v. *City National Bank and Trust Co.*

371 Ill. 565. In this case no constitutional question was raised or passed upon in the trial court. The assignment of error made in this court can be construed only as a complaint that the court erred in its decision. The constitutional requirement of due process of law is not a guaranty that courts shall not commit error in the trial of causes, nor is it a guaranty against erroneous or unjust decisions by courts which have jurisdiction of the parties and the subject matter. Mere error in a judgment or decree does not deprive the losing party of the benefit of due process of law. (*Tarallo* v. *Hubbell Fertilizer Co.* 281 Ill. 286; *Genslinger* v. *New Illinois Athletic Club,* 332 Ill. 316.) The only question raised by this assignment of error is the correctness of the decree. It is not a constitutional question within the meaning of the statute authorizing appeals or writs of error direct to this court. *People* v. *Prpich,* 368 Ill. 169; *Dillenburg* v. *Hellgren,* 371 Ill. 452.

Appellees, on the other hand, make an express contention that this court has jurisdiction on direct appeal because a freehold is involved. The sole basis for this claim stems from information gained from Parker, on cross-examination, that the Puritan Church had, in September, 1948, purchased a church site in Washington, D.C., for $35,000. It is true, as appellees contend, with a citation of authorities, that this court's jurisdiction is not adversely affected by the fact that the freehold involved is located outside the State of Illinois, where the trial court had jurisdiction of all proper parties. In the cases cited, however, both the issues raised in the trial court and those presented to this court clearly involved a freehold.

A freehold is involved, so as to give this court jurisdiction on appeal, when the necessary result of the judgment is that one party gains and the other loses a freehold estate, or when title to a freehold is so put in issue by the pleadings that determination of the case necessarily requires a decision with respect to the ownership of realty in con-

troversy. (*Harper* v. *Sallee*, 372 Ill. 199; *Browning* v. *Browning*, 379 Ill. 29; *Ziegler* v. *Perbix*, 380 Ill. 264.) the court's decree expressly direct the conveyance of real issue by the complaint or sought in its prayer, nor does In this case no adjudication of title to a freehold is put in property or adjudicate title thereto. There is no specific finding that contest funds were used to purchase the Washington property, nor is there any express direction that such property be conveyed to the receiver, thus, it must be said that the title to the real estate was not in issue, or determined, in the trial court. Even conceding that the decree may indirectly invest the receiver with power to proceed against the real estate, a freehold is not involved. Where the litigation, in a certain contingency, may result in the loss of a freehold but does not necessarily have that result, a freehold is not involved. (*Kurzawski* v. *Malaga*, 402 Ill. 207; *Wylie* v. *O'Connor*, 363 Ill. 615.) The freehold must be directly and not collaterally, contingently or incidentally involved. (*Cohen* v. *Oguss*, 384 Ill. 353.) The freehold in the present case was not directly involved in the issues presented to, and determined by, the trial court.

We also note that none of the errors assigned in this court touch upon a freehold, directly or indirectly. Where the alleged errors argued in this court do not involve a freehold, but relate to other matters, a freehold is not involved so as to give this court jurisdiction of the appeal. *Horner* v. *County of Winnebago*, 396 Ill. 382; *McBeath* v. *McBeath*, 334 Ill. 40.

A consideration of the entire record and of the errors assigned indicates that this court is without jurisdiction to hear and decide this appeal. The cause is therefore transferred to the Appellate Court for the First District.

*Cause transferred.*