JOHN J. HEALY, State's Attorney *ex rel.* Appellant, *vs.*
CHARLES DEERING *et al.* Appellees.

*Opinion filed December 17, 1907.*

1. MUNICIPAL CORPORATIONS—*a decree against city establishing
non-existence of street is binding upon public except for fraud.* A
decree by a court having jurisdiction of the subject matter and the
parties, finding that the complainants are the owners in fee of the
land claimed by a city (which was the party defendant) to be a
street and enjoining the city from interfering with complainants'
possession, is binding upon the public in the absence of fraud, and
the merits of the suit cannot be inquired into in a subsequent pro-
ceeding by the public to establish the existence of the street.

2. SAME—*a city represents the public as respects public rights
in street.* While a city's relation to its streets and alleys is merely
that of a trustee for the public, yet, in a suit involving the existence
of a street, if the city is a party it is the representative of the
public, and the decree, in the absence of fraud or collusion, is bind-
ing upon the public as a privy to the suit.

3. JUDGMENTS AND DECREES—*consent decree is binding upon the
parties and their privies.* A decree entered by consent of the par-
ties is binding upon the parties and those in privity with them, and
cannot be reversed or impeached by them or set aside by a bill of
review, or a bill in the nature of a bill of review, except for fraud.

APPEAL from the Superior Court of Cook county; the
Hon. GEORGE A. DUPUY, Judge, presiding.

In September, 1888, Edmund M. Ferguson caused a
tract of land owned by him in Cook county, lying partly
in the city of Chicago and partly in the city of Lake View,
to be laid off into lots and blocks, streets and alleys, sur-
veyed and platted as Clybourn avenue addition to Lake
View and Chicago.  Block 6 of said addition contained
twenty-six lots.  Lots 1 to 18, inclusive, fronted north on
Oakdale avenue.  Lots 19 to 23, inclusive, each had twenty-
five feet front and lot 24 two hundred and thirty-five feet
front.  These last named lots all fronted east and abutted
upon a strip of land thirty-three feet wide, designated on

the plat as Leavitt street. Between lots 23 and 24, and extending westward through said block 6 to Oakley avenue, a strip of land twenty feet wide was designated on the plat as an alley. The east line of the thirty-three feet designated as Leavitt street was the east boundary of the land platted by Ferguson. The plat was filed for record October 4, 1888. By its execution and recording the owner of the land dedicated to the public use the streets and alleys shown on the plat.

The bill in this case was filed in the name of John J. Healy, State's attorney of Cook county, upon the relation of George F. Koester and Henry G. Zander, "residents, citizens and electors of the city of Chicago, county of Cook and State of Illinois." After setting out the execution and recording of the plat, the bill alleged it was duly approved by the city of Lake View and the city of Chicago, and that each of said municipalities accepted the portions of streets and alleys within its limits, and that thereafter they were publicly used, improved, treated and considered as public streets and alleys until July 15, 1889, when the territory comprising the city of Lake View was annexed to and became a part of the city of Chicago, whereby the said city of Chicago became vested with the fee simple title to all the streets and alleys in the said addition for the uses and purposes for which they were dedicated, and that said Leavitt street was treated and improved by said city and used by the public generally as a public street. The bill alleges that lots 20 to 24, inclusive, have no street frontage except upon Leavitt street; that lot 25 fronts on the twenty-foot alley running east and west and has no street frontage, and that said alley is the only direct and easy grade outlet to Leavitt street from lots 25 and 26.

The bill further alleges that March 22, 1902, Charles Deering, James Deering and Richard F. Howe, having by *mesne* conveyances become the owners of lots 19 to 24, inclusive, being all that part of block 6 abutting on Leavitt

street, executed a pretended deed of vacation of said street the entire length of said block, also that portion of the alley between lots 23 and 24; that they caused said pretended deed to be recorded, and, claiming by virtue thereof said portion of said street and alley, proceeded to enclose the same and attempted to prevent the use thereof by the public, but were prevented from doing so by the city of Chicago, through its police force; that thereupon said Charles Deering, James Deering and Richard F. Howe, co-partners under the name of "The Deering Harvester Company," filed their bill in equity in the superior court of Cook county claiming to own said portion of said Leavitt street and alley, and prayed the city of Chicago and its officers be enjoined from interfering with their use of said property; that the city of Chicago entered its appearance and filed an answer claiming the property was a public street and alley, the title to which was invested in the city in trust for the public use, and denied the right of complainants to the relief sought. The bill further alleges the complainants to the said bill then entered into negotiations with the city of Chicago to secure the adoption of an ordinance allowing them to purchase from said city said portions of said street and alley; that this was finally agreed to by the city, and thereafter, on the 18th of July, 1904, in furtherance of said agreement, the city council of said city adopted an ordinance vacating said portions of said street and alley in consideration of the Deerings and Howe paying to the city $500 in cash and deeding it a strip of land thirty-three feet wide, extending from the south line of Oakdale avenue north a distance of about one block, as a part of Leavitt street.

Oakdale avenue ran east and west through Clybourn avenue addition, and its south line was the north boundary of the portion of Leavitt street sought to be vacated. From said south line of Oakdale avenue Leavitt street continued north to Clybourn avenue, its width as platted and dedi-

cated being thirty-three feet. This strip of land proposed to be conveyed to the city by the Deerings and Howe would give Leavitt street a width of sixty-six feet from the south line of Oakdale avenue north to Clybourn avenue. The ordinance recited the fact that a controversy had arisen between the Deerings and Howe and the city as to the ownership of the portion of Leavitt street and the alley sought to be vacated, and required the Deerings and Howe to make the conveyance and pay the $500 within thirty days. These requirements were complied with, and the bill alleges that in pursuance of said ordinance a consent decree was entered in the injunction suit, finding complainants in the bill to be the owners in fee simple of the portion of Leavitt street and the alley mentioned, and enjoining the city of Chicago, its officers, agents and servants, from interfering with complainants in the use and enjoyment of it. Said decree recites that the city of Chicago, for a valuable consideration given by the complainants, waived and released all errors and supposed errors, and agreed not to appeal from said decree or sue out a writ of error to review the same. The bill alleges that thereupon the Deerings and Howe, under the name of "The Deering Harvester Company," took possession of the said portions of Leavitt street and said alley claimed to have been vacated, have caused the same to be assessed for taxation as private property, have paid the taxes thereon and excluded the public from the use thereof. The bill charges that the city had no authority to adopt said ordinance; that said ordinance shows on its face the vacation of the portion of the street and alley was intended to be made for private uses and purposes, and that it was *ultra vires* and void. The prayer of the bill is, that the deed of vacation made by the Deerings and Howe in March, 1902, also the ordinance and the decree rendered in the suit of the Deerings and Howe against the city of Chicago, be declared to be void and of no effect, and that said street and alley be decreed to be public highways of the city of

Chicago, and that defendants be ordered to remove all obstructions to the public use thereof. The superior court sustained a demurrer to the bill and dismissed it for want of equity, and from that decree this appeal is prosecuted.

THOMAS H. STEVENSON, for appellant:

The statute giving municipalities control of the streets and alleys within their corporate limits does not invest the municipal authorities with power to vacate a street for the sole benefit of a private person. *Smith* v. *McDowell,* 148 Ill. 51; *Pennsylvania Co.* v. *Chicago,* 181 id. 289; *People* v. *Harris,* 203 id. 272; *People* v. *Railroad Co.* 217 id. 594.

A municipality cannot sell a street to a private person. *Murray* v. *Allegheny,* 136 Fed. Rep. 57.

The power of municipalities to vacate streets and alleys is not absolute, but must be construed in view of the purposes for which the municipality is invested with the control of its streets. The municipality, in respect to its streets, is a trustee for the general public, and holds them for the use to which they were dedicated. *Smith* v. *McDowell,* 148 Ill. 51; *Lumber Co.* v. *Cicero,* 176 id. 23; *Field* v. *Barling,* 149 id. 556; *Pennsylvania Co.* v. *Chicago,* 181 id. 289.

An ordinance vacating a street for the purpose of curing the defects in the title of persons who claim such street as their private property is *ultra vires* and void. *DeLand* v. *Power Co.* 225 Ill. 212.

The decree of July 25, 1904, is not an adjudication, and as against the city does not bar the State's attorney. *Jenkins* v. *Robertson,* 1 L. R. Scotch Div. & App. H. L. 117.

WILLIAM D. BARGE, and GEORGE W. MILLER, (EDWARD J. BRUNDAGE, Corporation Counsel, of counsel,) for appellee the city of Chicago:

The State's attorney cannot maintain a bill of this nature without showing that the relators, unless the injunction is granted, will suffer a pecuniary injury by an increase in

the burden of taxation. High on Injunctions, (4th ed.) sec. 1554; *State* v. *Pennoyer,* 26 Ore. 205; *State* v. *Lord,* 28 id. 498.

The question whether a street should be kept open is one of expediency, to be determined by the city council and not by the courts, and the courts will not inquire into it. *Glasgow* v. *St. Louis,* 107 Mo. 198; *State* v. *Clark,* 54 id. 36; *Railroad Co.* v. *Springfield,* 85 id. 676; *Kittle* v. *Fremont,* 1 Neb. 329; *Meyer* v. *Teutopolis,* 131 Ill. 552.

The city has power to vacate streets. City and Village act, art. 5.

When a street is vacated, the law,—not the city council,—gives the fee to the abutting owner or to the original dedicator. *St. John* v. *Quitzow,* 72 Ill. 334; *Gebhardt* v. *Reeves,* 75 id. 301; *Helm* v. *Webster,* 85 id. 116.

It is not a valid objection to a vacation ordinance that some one will profit by it. *Meyer* v. *Teutopolis,* 131 Ill. 552; *Parker* v. *Catholic Bishop,* 146 id. 158; *Mt. Carmel* v. *Shaw,* 155 id. 37; *Whitsett* v. *Depot Co.* 10 Colo. 243.

EDGAR A. BANCROFT, and VICTOR A. REMY, for other appellees:

The decree in Deering against the city of Chicago adjudicated the precise question here and is conclusive of this controversy. The city was the complete representative of the public's rights or claims to the parcels of land in question. *Elson* v. *Comstock,* 150 Ill. 303; *O'Connell* v. *Railroad Co.* 184 id. 308; *State* v. *Rainey,* 74 Mo. 229; *People* v. *Holladay,* 93 Cal. 241; *People* v. *Baudry,* 91 id. 213; *Detroit* v. *Ellis,* 103 Mich. 612.

A judgment by default, confession or agreement is as conclusive between the parties and their privies as any other. *Mining Co.* v. *Mining Co.* 157 U. S. 683; *Knobloch* v. *Mueller,* 123 Ill. 554; *In re South American and Mexican Co.* L. R. 1 Ch. Div. 37; *Sholl* v. *Coal Co.* 139 Ill. 21;

24 Am. & Eng. Ency. of Law, 796; 1 Black on Judgments, secs. 78, 246, 251, 319.

The following recent cases are in point upon the question of the former decree being conclusive here: *Pratt* v. *Griffin,* 223 Ill. 349; *In re Estate of Stahl,* 227 id. 529; *Leigh* v. *Brake-Beam Co.* 224 id. 76.

Mr. JUSTICE FARMER delivered the opinion of the court:

It will be seen from the bill, the substance of which we have endeavored to set out, appellant's contention is that the attempted vacation of the street and alley by the city of Chicago was for the private use and benefit of private individuals, and if this be true, it is argued the ordinance and decree relied on are ineffectual to accomplish that purpose. The nature of a city's title and interest in its public streets, and the limitations upon the power conferred upon it by the legislature to vacate streets and alleys, has been so often and thoroughly passed upon by this court as to not require further discussion here. Some of the cases where these questions have been discussed are *Smith* v. *McDowell,* 148 Ill. 51, *Canal Comrs.* v. *Village of East Peoria,* 179 id. 214, *Pennsylvania Co.* v. *City of Chicago,* 181 id. 289, *City of Mt. Carmel* v. *Shaw,* 155 id. 37, *Parker* v. *Catholic Bishop,* 146 id. 158, and *People* v. *Atchison, Topeka and Santa Fe Railway Co.* 217 id. 594.

In our opinion, however, this case cannot be disposed of by a determination of whether the city of Chicago exercised a reasonable discretion, within the limits of the power conferred upon it by the legislature, in the adoption of the ordinance. Appellant's bill alleges appellees instituted a suit in chancery against the city of Chicago claiming the ownership of the property in dispute, and sets out in full the decree entered in that case. It appears from the decree the court had jurisdiction of the city of Chicago,

and the cause coming on to be heard upon the stipulation
of the parties as to the facts, the parties being represented
by their respective counsel, the court decreed appellees to
be the owners in fee simple of the property in dispute, de-
scribing it particularly, and enjoined the city of Chicago
from interfering with their use and enjoyment of it. A
special ground of appellees' demurrer to appellant's bill in
this case was, "that it appears by the complainant's bill
that all the questions and issues therein presented have been
presented, prosecuted and finally adjudicated by a court of
competent jurisdiction in a suit between the same parties in
interest and their privies." Appellant insists that said de-
cree was not the result of the deliberation of the court upon
a contested issue of facts, but was entered by consent of the
corporation counsel of the city of Chicago, who acted under
the direction of the city council of said city, and is there-
fore not binding upon the people. The bill here does not
question the court's jurisdiction of the subject matter and
of the parties, nor is there any allegation that the parties,
or either of them, were guilty of any fraud in the procure-
ment of said decree. The argument is made that the public
was not fairly represented by the city in the suit wherein
said decree was rendered; that the decree was consented to
by the city of Chicago as a part of its plan to vacate, for
the benefit of appellees, a portion of a public street and
alley, and for that reason it is not *res judicata* against the
public and the public is not affected thereby.

A city's relation to its streets and alleys is that of trus-
tee for the use and benefit of the public, and in legal pro-
ceedings where the existence of a public street is involved
the public may be represented by the city or by the Attorney
General or the State's attorney. If a suit is instituted by an
individual to establish the title to and recover the posses-
sion of land claimed by a city to be a public street, it is not
necessary that both the city and the people of the State
should be made parties to the suit in order that the judg-

ment may be binding upon the public. Neither is it necessary in an action to establish the existence of a public street that the people of the State and city should join as plaintiffs. In such case, where the city is a party, it is the representative of the public. The people of the State are privies, and a judgment not the result of fraud and collusion is binding upon the people. *Elson* v. *Comstock,* 150 Ill. 303; *O'Connell* v. *Chicago Terminal Railroad Co.* 184 id. 308; *State* v. *Rainey,* 74 Mo. 229.

A very clear discussion of the question will be found in *People* v. *Holladay,* 93 Cal. 241, (27 Am. St. Rep. 186.) In that case the suit was brought by the Attorney General on behalf of the people, upon the relation of a citizen, claiming that certain land in the city of San Francisco had been lawfully dedicated to the public use as a public square, and had been entered upon by the defendant, Holladay, and the public use of the land obstructed by the erection of fences and buildings thereon. One of the defenses set up by Holladay in his answer was, that previous to the commencement of the suit he had brought an action against the city and county of San Francisco claiming title to the land and asking to have his title quieted as against the adverse claims of said city and county, and that in said proceedings judgment was entered in his favor. The Supreme Court of California held that judgment was binding on the public, and said: "The city and county of San Francisco is a municipal corporation created by the legislature of the State, and has conferred upon it by the State full power and jurisdiction over the public squares within its territorial limits, with the right to sue and be sued, and this necessarily includes the authority to maintain and defend all actions relating to its right to subject to the public use such squares or land claimed by it to have been dedicated for such purposes; and in any action brought by it for the purpose of vindicating and protecting the public rights in such squares, or land claimed as such, the State would be bound by the

result, because in such action the city and county would, in fact, represent the people of the State by virtue of the authority given it to maintain such actions for the purpose of preserving the public rights of which it is the trustee. * * * And we see no reason why these same rights might not also be tried and determined in an appropriate action in which the municipality might be a defendant,—as, for instance, ejectment, where it had ousted the claimant from the possession, or by injunction, where it threatened to remove his buildings or trees or a portion of the soil from the land claimed by it as a public square; and the public would be bound by the final judgment therein if the action was conducted in good faith on the part of the city. The rule that the citizen shall not be twice vexed for the same cause of action is as binding upon the State as upon other litigants; and the legislature, in conferring upon the city power to maintain and defend in the courts the rights of the State to streets and squares within its limits must be presumed to have done so with reference to this well-known maxim, and to have intended that the State should be bound by the result of such litigation."

The cases determined by this court, above cited, did not so directly involve the precise question to be determined as did the California case, but they are analogous in principle and the rules announced in them are clearly in harmony with the *Holladay case*.

Appellant contends that the deed of vacation of the street and alley executed by the Deerings and Howe was invalid, and that they knew or believed this to be true is shown by the fact of their agreeing to deed the city the strip of land above described, paying $500 in cash and securing the adoption of the ordinance of vacation. The merits of the suit by appellees against the city to establish their claim to the land in dispute cannot be inquired into by us in this case. The decree recites that the facts were stipulated between the respective parties. In the absence of

charges of fraud and collusion in the bill in procuring the decree it is not subject to attack, either directly or collaterally. Nothing appears upon the face of it showing fraud or bad faith or that the court did not act advisedly.

In *O'Connell* v. *Chicago Terminal Railroad Co. supra,* certain parties filed a bill to enjoin the railroad company from constructing its road-bed across an alleged highway over certain premises in the village of Summit. Complainants denied the existence of the public highway, and on the trial offered in evidence a decree previously entered in a suit of Jane S. Martin against the village of Summit. That suit was a bill in chancery by Jane S. Martin denying the existence of the highway in question, and asking that the village of Summit be enjoined from further using it or prosecuting work on it as a highway. The decree found the allegations of the bill to be true that no such highway as claimed by the village existed, and perpetually enjoined the village as prayed. This decree was objected to on the ground that the Chicago Terminal Transfer Railroad Company and its co-defendants were not parties to that suit and the decree was therefore not binding on them. The objection was sustained, and this court held the ruling of the trial court in sustaining the objection to be erroneous, on the ground that the decree in the *Martin case* was an adjudication that the highway did not exist, and while the Chicago Terminal Transfer Railroad Company and its co-defendants were not parties to that suit, they were privies to the decree and were bound thereby as conclusively as was the village of Summit. The court said (p. 324): "In the *Martin case* the village of Summit was defendant, and claimed, as the representative of the public, to be the owner of the highway in question. Upon its organization the village succeeded to whatever rights the town of Lyons had in the highway. The decree in the *Martin case* adjudicated upon the rights of the village in and to this very highway. The appellees last above named are here claiming the right

to use this highway through an ordinance passed by the village of Summit, giving them permission to cross the highway. They set up no rights here except so far as they derive them from the village and its ordinance, as already described, hence they cannot be regarded otherwise than as privies, claiming in privity with the village of Summit. Their rights are therefore affected by the decree rendered in the *Martin case.* As that decree held that the village of Summit had no right to the public highway which is here claimed to exist, the village could not clothe these appellees with any right or interest in said highway. In order to succeed here under the issues made by the pleadings, appellees must establish the existence of the alleged highway, throughout its whole length, across the three lots 5, 4 and 3, and as the Martin decree stands in the way of the establishment of any such highway, the defense made by the appellees to this bill falls to the ground. It makes no difference whether the decree in the *Martin case* was a consent decree or not. Even if entered by consent of the village, it is binding upon those who are in privity with the village."

In the California case, before cited, the court expressed its conviction that the judgment in favor of Holladay and against the city and county of San Francisco was wrong, but said "its force as an adjudication of the rights of the parties thereto and those in privity with them is not affected thereby." In *Knobloch* v. *Mueller,* 123 Ill. 554, it was held a decree entered by consent cannot be reversed, impeached or set aside by bill of review or bill in the nature of a bill of review, except for fraud. Appellant places great reliance upon *Jenkins* v. *Robertson,* 1 L. R. Scotch Div. & App. H. of L. 117. But we do not think it conclusive in favor of appellant's position, and in the absence of allegations of fraud in procuring the decree in the suit of appellees against the city of Chicago we think it clear, under the decisions of this court and the courts of other States in the Union, said

decree was binding upon the appellant, whether erroneous or not.

The decree of the superior court sustaining the demurrer and dismissing the bill is affirmed.

*Decree affirmed.*