# RHEINBERGER v. SECURITY LIFE INS. CO. OF AMERICA.

## CITY OF EVANSTON et al. v. NERLOVE.
### No. 8451.

Circuit Court of Appeals, Seventh Circuit.
Dec. 28, 1944.

Rehearing Denied Feb. 16, 1945.

O. D. Buckles and George A. Mason, both of Chicago, Ill., for appellants.

Arthur S. Lytton and Olaf A. Olson, both of Chicago, Ill., for appellee.

Before SPARKS, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

Appellee, Nerlove, as sole surviving trustee of the Security Life Insurance Company of America Trust (which Trust, or its predecessor Company, is hereinafter referred to as Security), filed his complaint in equity for an injunction against withholding possession of and obstructing two strips of land, and compensation therefor. The District Court granted appellee a prohibitory and mandatory injunction. From this order, appellant, City of Evanston, appeals. The question of compensation to the Trust for the withholding or obstruction of the property was expressly excluded from and held open by the order, and is not involved in this appeal.

To secure her note for $25,000, in 1925 Mrs. Barker executed and delivered her trust deed to certain property, which note and trust deed became a part of the assets of Security.

When Mrs. Barker failed to pay her note in 1930, Security filed a bill to foreclose the trust deed in the Circuit Court of Cook County, Illinois, making the City of Evanston a party defendant and alleging that the right, title and interest of any and all defendants were "subject and inferior" to its lien by virtue of the trust deed. The only relief that Security sought in its foreclosure suit was that the trust deed be decreed to be a first lien; that defendants be required to pay Security the amount due; *and that defendants be barred from all rights of redemption.* The City filed an answer which denied that Security's rights were superior to its own as to certain parts of the property. The parts were three strips: one taken by condemnation which is not involved in this appeal; the south 33 feet which the City claimed by virtue of a quitclaim deed from Mrs. Barker given subsequent to the trust deed and the use of said strip for purposes of a public street known as Oakton Street since 1926; and the east 39 feet by virtue of long continued user for a public street known as Florence Avenue.

On the basis of a master's report, the Illinois Circuit Court found that the defendants' rights and interests in and to the property were subject and inferior to the lien which Security had acquired by virtue of the trust deed. The decree provided that the defendants and all persons claiming under them, or either of them, in the absence of redemption within the statutory period (which did not occur), should "* * * be forever barred from all equity of redemption and claim of, in and to said premises, and every part and parcel thereof." The decree further provided that if the party in possession failed to surrender it to the person acquiring the property at the master's sale, a writ of assistance should be issued in accordance with the practice in the Illinois Circuit Court. No appeal was taken. A master's sale was made to Security and duly approved. On July 3, 1934, the master's deed issued to the trustees of Security. No writ of assistance was ever applied for.

For more than four years, Security did absolutely nothing. It was not until July 20, 1938 that Nerlove caused a written demand for possession of the strips in question to be served upon the City. The City took no action thereon, and again, Security took no action to back up its demand for nearly two years.

On April 25, 1940, Security filed its petition in the District Court which instituted

the instant action. It charged that the City was wrongfully using the two strips as part of Florence Avenue and of Oakton Street, and that such occupancy constituted a continuing trespass. By way of relief it asked for a temporary and permanent injunction against the City's further possession of the two strips and against interference with attempts to remove the curbing, pavement, and other "obstructions." Presumably the term obstructions referred to the water and gas mains, sewer, electric conduits and lamps, telephone pole and trees.

An objection has been raised to the jurisdiction of the District Court. Jurisdiction over the City's person is conceded, so the issue is narrowed to whether there was jurisdiction over the subject matter. This question is always open and it is our duty to determine it. Jones v. Brush, 10 Cir., 143 F.2d 733; Page v. Wright, 7 Cir., 116 F.2d 449; Caesar v. Burgess, 103 F.2d 503. The Security Life Insurance Company of America went into equity receivership in the federal court in 1932. Ever since the original appointment of the receiver, the subsequent appointment of three trustees and, following the resignation of two of said trustees in 1936, the final designation of Nerlove as sole surviving trustee, the property and assets of Security have been and now are in the custody and control of, and are being administered and liquidated under orders of, the District Court. Its jurisdiction has never been relinquished or terminated. The trust agreement between the receiver and trustees, entered into pursuant to the District Court's order, which is still in effect and under which the trustee is operating, provides for semi-annual reports by the trustee to the District Court which must be approved or disapproved by said court. The trustee may not dispose of an asset of the trust if it is worth $5,000 or more without specific order of said court authorizing same, and all disbursements made by the trust for fees, expenses or other items incident to said trust are subject to the discretion and authorization of said court. Hence when the deed was issued to the trustees the property became an asset of the trust, immediately subject to the custody, administration and protection of the District Court. Since Nerlove, as trustee, stood in the shoes of the receiver, and in the same relation to the District Court, any suit by him in the course of

winding up the affairs of Security was ancillary to the main suit and cognizable in that court. Green-Boots Const. Co. v. Hays, 10 Cir., 56 F.2d 829; cf. Porter v. Sabin, 149 U.S. 473; 479, 13 S.Ct. 1008, 37 L.Ed. 815.

The City claims the fee to or an interest in these strips by virtue of the plat of 1866, by adverse possession, by common law dedication, and by fifteen years' user under the Illinois statute which provides that "All roads in the state which have been laid out in pursuance of any law of this State, * * *, or which have been established by dedication or used by the public as highways for fifteen (15) years, and which have not been vacated in pursuance of law, are hereby declared to be public highways." Ill.Rev.Stat.1943, Chap. 121, § 152.

On the trial the City offered survey maps, plats, drawings, historical documents, and the testimony of many aged residents and other witnesses to show that Oakton Street and Florence Avenue were public highways long prior to the date of the mortgage. The trial judge excluded this evidence on the ground that if it were admitted, it would amount to a collateral attack on the Circuit Court's foreclosure decree. D.C., 51 F.Supp. 188.

The principal question is whether in this action, the foreclosure decree was conclusive upon the City.

Appellee, contending that it is, argues that the foreclosure decree is not subject to collateral attack because the court had jurisdiction of the person and of the subject matter; that all issues of fact or law which were or could have been raised are considered as having been raised and determined and are within the rule of res judicata, and cites, among other cases, Healy v. Deering, 231 Ill. 423, 83 N.E. 226, 121 Am.St.Rep. 331; Sielbeck v. Grothman, 248 Ill. 435, 94 N.E. 67, 21 Ann.Cas. 229; Clark v. Zaleski, 253 Ill. 63, 97 N.E. 272; Gregory v. Suburban Realty Co., 292 Ill. 568, 127 N.E. 119; Armstrong v. Obucino, 300 Ill. 140, 133 N.E. 58; Knaus v. Chicago Title & Trust Co., 365 Ill. 588, 7 N.E.2d 298; and Barry v. Commonwealth Edison Co., 374 Ill. 473, 29 N.E.2d 1014.

On the other hand appellant contends that the only proper object of the foreclosure suit was to cut off the equity of redemption of all persons claiming under Mrs. Barker any title or interest inferior

or subject to the mortgage, and that the rights of the City, being prior, adverse and paramount to the rights of the mortgagor and appellee, could not be contested in the foreclosure suit and consequently are not barred by the decree.

■ The doctrine that where a court has once acquired jurisdiction it has a right to decide every question which arises in the cause, and its judgment or decree, however erroneous, cannot be collaterally assailed, is only correct when the court proceeds according to the established modes governing the class to which the case belongs and does not transcend in the extent and character of its judgment or decree the law or statute which is applicable to it. Armstrong v. Obucino, 300 Ill. 140, 143, 133 N.E. 58. In other words, though the court may possess jurisdiction of the person and of the subject matter, it is still limited in its modes of procedure and in the extent and character of its decree.

It may be well at this point to discuss some of the cases claimed by appellee to be decisive of the question. It will not be necessary to discuss them all. He relies principally upon Knaus v. Chicago Title & Trust Co., 365 Ill. 588, 7 N.E.2d 298; Healy v. Deering, 231 Ill. 423, 83 N.E. 226, 121 Am.St.Rep. 331; Sielbeck v. Grothman, 248 Ill. 435, 94 N.E. 67, 21 Ann.Cas. 229.

In the Knaus case, supra, foreclosure proceedings were instituted in which Knaus was named as defendant. There was no claim of the existence of a prior, adverse and paramount title. The only question at issue was whether or not the complainant in the foreclosure proceeding was entitled to a foreclosure decree. A decree was entered, the property was sold, and a deed issued. Subsequently Knaus filed his complaint designating it as one to "quiet title, cancel instruments and accounting." In his complaint Knaus alleged that the complainant in the foreclosure suit had no authority to purchase the bonds secured by the trust deed upon which the foreclosure suit was based, and that this fact constituted such fraud as to deprive the court of jurisdiction. The complaint was dismissed for want of equity. On appeal the Supreme Court said that the sole object of Knaus' complaint was to obtain a review of the earlier foreclosure and was in the nature of a bill of review, and held it was barred by a statute of limitations. Clearly that case is distinguishable from our case and does not support appellee's contention.

In Healy v. Deering, 231 Ill. 423, 83 N.E. 26, 121 Am.St.Rep. 331, the City adopted an ordinance vacating the street and the decree was entered in pursuance of that ordinance. The vacating of the street was squarely and directly adjudicated in the first decree. Here, there was no such ordinance, and vacation of the streets was not the issue in the foreclosure suit.

In Sielbeck v. Grothman, 248 Ill. 435, 94 N.E. 67, 21 Ann.Cas. 229, the children who were not allowed to make a collateral attack on the title which the defendant had acquired under the foreclosure decree had been parties to the foreclosure suit and were well aware that their mother was mortgaging the fee, not just a dower interest. The court held only that the presumption that the father had died intestate so that the children as his only heirs took title under the laws of inheritance had been rebutted by the finding in the foreclosure suit that the mother had a fee and the children had an equity of redemption. The presumption vanished on a showing that the facts were not in accord with it. Contrast that situation with the instant case. Here the City does not rely on a presumption. The City's title did not stem from the same source as the mortgagor's, but from an external, independent source, and the City's adverse rights in the strips were not properly in issue in the foreclosure suit. As is brought out in the authorities and the Covenants of Warranty Act which are subsequently discussed, even though Mrs. Barker included the strips in mortgaging the tract and Security foreclosed the mortgage, the City was not thereby divested of all rights therein. It is not necessary to interpret the foreclosure bill as alleging and the foreclosure decree as finding that Mrs. Barker conveyed the tract free and clear of the City's right to use the strips for street purposes, so the force to be given to the foreclosure proceedings is entirely different from and materially less than the effect given to the decree in the Sielbeck case.

■ The purpose of a foreclosure suit is to bar all claims or rights arising subsequent to the mortgage, Gregory v. Suburban Realty Co., 292 Ill. 568, 127 N.E. 119. Under foreclosure proceedings questions of adverse or paramount legal titles to the real estate are not adjudicated and

may not be tried, as such questions are legal and not equitable and are not germane, Johnson v. Hefferan, 365 Ill. 359, 367, 6 N.E.2d 638, and First National Bank v. Bryn Mawr Beach Bldg. Corporation, 365 Ill. 409, 417, 6 N.E.2d 654, 109 A.L.R. 1123.

An early discussion of the question confronting us is to be found in the case of Gage v. Perry, 93 Ill. 176. In that case a stranger to the mortgage was made a party defendant, it being alleged that he claimed some interest in the mortgaged premises, but that, whatever interest he might have, he held the same subordinate to the mortgage. The defendant answered the bill, setting up an adverse legal title to a portion of the mortgaged premises, and expressly denied that his interest was subject to the mortgage. The trial court decreed a foreclosure and that the holder of the adverse title was barred if he did not redeem according to law. The Supreme Court held that such an adverse claim of title, in no way connected with the title of the mortgagor, was not a proper subject of consideration in the suit to foreclose the mortgage.

In the case of Whitaker v. Irons, 300 Ill. 254, 257, 133 N.E. 265, 266, the court said: "The only proper parties to a bill to foreclose a mortgage are the mortgagor and the mortgagee and those who acquired rights under them subsequent to the mortgage. Where a defendant claims a title adverse and superior to that of the mortgagor, such adverse claim of title *is not a proper subject of consideration, in a foreclosure suit* [emphasis added], and, when such is disclosed to be its character by the answer and the proofs, the holder of the adverse claim should be dismissed from the suit."

In the case of Prudential Ins. Co. v. Hoge, 359 Ill. 36, 193 N.E. 660, the complaint alleged that certain of the defendants "claimed some right, title or interest in the premises sought to be foreclosed" and prayed that "these persons might be adjudged to have no title to the land nor any interest in it." The court at page 38 of 359 Ill., at page 661 of 193 N.E. said: "Although the parties in the trial court put the title to this land in issue by their pleadings and although that court permitted this to be done, it was nevertheless not a proper matter to be litigated in a suit for foreclosure. Those allegations in the bill of complaint whereby an attempt was made to quiet the title of the mortgagor * * * were not germane to the proper subject-matter of the suit, and the findings of the chancellor thereon are *surplusage* [emphasis added] and not only not necessary to the decree of foreclosure, but were improper." Jones v. Horrom, 363 Ill. 193, 1 N.E.2d 694, was also a foreclosure suit with similar allegations. In that case the court at page 196 of 363 Ill., at page 696 of 1 N.E.2d said: "The general rule, in a suit to foreclose a mortgage, is that the parties cannot * * * inject into the proceeding, for adjudication, questions of title to the real estate involved, and such rule includes titles both adverse and paramount. * * *"

"The fact that, by the pleadings, some of the parties may have put in issue the title to the real estate covered by the trust deed, *did not confer upon the circuit court trying the cause, jurisdiction to determine the title to such premises.*" (emphasis added) Jones v. Horrom, supra, 196 of 363 Ill., at page 696 of 1 N.E.2d.

Thus, from these cases, we learn that a foreclosure suit is not designed to eliminate a defendant's prior adverse claim. The matter to be litigated in such a suit, is the right to a foreclosure decree to cut off the equity of redemption and to dispose of all claims arising by act of the mortgagor subsequent to the execution of the mortgage, which is binding on all questions within that issue.

As we have already observed, the allegations of the complaint in the Circuit Court foreclosure suit, and the decree entered therein, were designed to cut off the equity of redemption and to dispose of all claims arising by act of the mortgagor subsequent to the execution of the mortgage. The present action for trespass is different from the foreclosure suit, so the decree in the foreclosure suit does not seem to afford a proper basis for the doctrine of res adjudicata as applied by the District Court. What was actually litigated and determined in the foreclosure suit so far as the City was concerned was the City's title to the strip which it claimed under the quitclaim deed from Mrs. Barker.

The master found that the City's interest under said deed was subject and inferior to the lien of Security's mortgage, so that if the City had attempted to assert that it was not trespassing on the strips on the ground that it had acquired the right to

be there under the quitclaim deed, it would not have been allowed to do so because of the doctrine of estoppel by judgment. But there is no clear finding by the master or in the decree confirming his findings that the City's claim to the strips which arose prior to the date of the execution of the mortgage was wiped out, so it seems extremely doubtful (even if that question could be tried) whether that claim was tried and adjudicated. It is pushing the doctrine of res judicata too far to say that the City is estopped to bring up defenses to this action for trespass because "every question which might have been raised in the foreclosure action was settled by the decree in that action." Indeed, since the City's prior, adverse claim was not the subject matter of litigation in the foreclosure suit, Whitaker v. Irons, supra; Prudential Ins. Co. v. Hoge, supra; Jones v. Horrom, supra; California Safe-Deposit & Trust Co. v. Cheney Electric Light, Telephone & Power Co., 56 F. 257, 258, evidence, introduced in support thereof would have been excluded as inadmissible because irrelevant and immaterial. Thus the City should not be charged with having been remiss in its duty in not trying to introduce it. Of course the City could not ask to be dismissed from the suit as an improper party, as the District Court's opinion suggests, because it was a proper party insofar as its claim arising from the quitclaim deed was concerned for the reason that said claim came from the mortgagor and was subsequent to the giving of the mortgage.

It is true that the City's answer in the foreclosure suit contained one paragraph in which the City stated that the public had used Florence Avenue as a thoroughfare for a long time prior to the date of execution of the mortgage. It seems doubtful, however, whether the court found it necessary to adjudicate this claim in foreclosing the mortgage. Certainly the master made no clear finding and ruling on the point, as he did on the quitclaim deed which the City took from Mrs. Barker. Perhaps the court wanted to be sure to stay within the proper scope of its jurisdiction in the foreclosure action so as not to be reversed on appeal. Whatever its motive may have been, we do not think there was a full and fair trial and adjudication of the existence or non-existence of a street and the City's rights therein.

True, the master found and the decree provided that Security had a valid and subsisting lien on the tract for the payment of its debt and that the rights of all the other defendants were subject and inferior to said lien. But this is not a finding and holding that the City thereby lost its right to use the strips as public highways; it was not a finding and holding that was intended to deprive the City of its well traveled streets and the people of a State Aid road. Public rights do not hang by so flimsy a thread. Since the City's rights to the strips springing from plat, common law dedication, adverse possession and user were not really tried and adjudicated, its claim based thereon was not determined. Hence the doctrine of res adjudicata as applied to the instant case does not have the force ascribed to it by the District Court.

 We are not persuaded that the foreclosure decree was an adjudication on the issues raised herein, but if it was, insofar as it purported to bar the City's rights to the streets, it ruled on a matter not fairly within the jurisdiction of said court sitting to foreclose Security's mortgage. Whitaker v. Irons, supra; Prudential Ins. Co. v. Hoge, supra; and Jones v. Horrom, supra. Cf. Bozarth v. Landers, 113 Ill. 181, 185; Appleton Waterworks Co. v. Central Trust Co., 7 Cir., 93 F. 286, 289; California Safe-Deposit & Trust Co. v. Cheney Electric Light, Telephone & Power Co., supra; and Gregory v. Suburban Realty Co., supra. Hence its decree is without force as a basis for the doctrine of res judicata in this suit for trespass. Even a city may not alien or otherwise encumber a street, over which it exercises control, to an individual for private purposes so long as it is a public street, but must hold it in trust for public uses only. Snyder v. City of Mt. Pulaski, 176 Ill. 397, 52 N.E. 62, 44 L.R.A. 407. Much less may Mrs. Barker, a private party, completely divest the public of all rights therein by giving a mortgage thereon for her personal debt. Thus if the foreclosure decree purported to extinguish such rights, it was beyond the court's jurisdiction and void. Bigelow v. Forrest, 76 U.S. 339, 19 L.Ed. 696. And this is true notwithstanding the fact that Mrs. Barker "conveyed and warranted" the property by her trust deed, for the Covenants of Warranty Act which has been in force in Illinois since 1874 express-

ly provides that no covenant of warranty shall be considered broken by the existence of a highway upon the land conveyed, unless otherwise particularly specified in the deed. Ill.Rev.Stat.1943, Chap. 30, § 38. There was no such specification here. Accordingly, the foreclosure suit in the state court did not clear the property of the City's fee, easement or other interest in the strips if it in fact had such interest.

We need not decide the exact nature of the City's interest. If it had an interest in the strips, however that interest may be characterized, private individuals may not encroach thereon to the detriment of the superior rights of the public, Sears v. City of Chicago, 247 Ill. 204, 215, 93 N.E. 158, 139 Am.St.Rep. 319, 20 Ann.Cas. 539, and certainly, if Security were allowed to tear up these streets and improvements or to cause them to be torn up, there would be an encroachment harmful to the public's rights.

 It is indeed an anomalous situation, which does not commend itself to the conscience of a court of equity, that Security was permitted to sue for an injunction against and damages for trespass while the City was not allowed to defend on the ground that there was no trespass at any time. The City says that its entry was rightful; that it has been in lawful possession of the strips for over fifty years; and that it has lawfully used these strips as public thoroughfares. The trial judge assumed that there was a trespass original and continuing, and he would not let the City show that the assumption was erroneous. We think this evidence was admissible.

We do not, of course, decide that there were highways on the land prior to the date of the mortgage. Much of the foregoing discussion is predicated on the assumption that there were such highways, but it will be incumbent upon the City to prove the existence of the streets on the two strips and also to prove that it had gained title thereto or an interest therein. We express no opinion on the merits of the City's claim. We hold only that the evidence and testimony offered by the City was admissible.

The cause is remanded with directions to vacate the order appealed from and for further proceedings not inconsistent with the views herein expressed.

It is so ordered.