Bulk Terminals Company *et al.*, Plaintiffs-Appellants, *v.* Environmental Protection Agency *et al.*, Defendants-Appellees.

(No. 60865;

First District (4th Division)—June 11, 1975.

Lord, Bissell & Brook, of Chicago (Robert A. Knuti and R. R. Mc-Mahan, of counsel), for appellants.

William J. Scott, Attorney General, of Springfield, and Bernard A. Carey, State's Attorney, of Chicago (Dennis R. Fields, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This is an appeal by the plaintiffs, Bulk Terminals Company and Gerald L. Spaeth, from an order of the Circuit Court of Cook County, dismissing their complaint. The complaint requested the court to halt proceedings pending before the Illinois Pollution Control Board charging them with violations of the Illinois Environmental Protection Act and air pollution regulations.

Plaintiff, Bulk Terminals Company (hereinafter Bulk), operates a bulk storage facility at 12200 South Stony Island Avenue in Chicago. Plaintiff, Gerald L. Spaeth, is the president of the firm and is in charge of its daily operations. For several months Bulk stored in its tanks a chemical, silicon tetrachloride, which was owned by Cabot Corporation. On April 26, 1974, a leak developed in one of the storage tanks containing the chemical, and as it reacted with the moisture in the air, it formed hydrochloric acid vapor and silicon dioxide.

Thereafter the city of Chicago served Bulk and Spaeth with a series of complaints alleging violations of section 17—2.6 of the Municipal Code of the city of Chicago.[1] The City alleged that the emissions of

---

[1] Section 17—2.6 of the Municipal Code of Chicago (1973) provides:

"It shall be unlawful within the City of Chicago and within one mile of the corporate limits for any person, owner, agent, operator, firm or corporation to permit to cause, suffer or allow the discharge, emission or release into the atmosphere from any source whatsoever of such quantities of soot, fly ash, dust, cinders, dirt, oxides, gases, vapors, odors, toxic or radioactive substances, waste, particulate, solid, liquid or gaseous matter or any other materials in such place, manner or concentration as to constitute atmospheric pollution."

Section 17—2.1 defines "atmospheric pollution" as:

"The discharging from stacks, chimneys, exhausts, vents, ducts, openings, buildings, structures, premises, open fires, portable boilers, vehicles, processes, or any other source, of any smoke, soot, fly ash, dust, cinders, dirt, noxious or obnoxious acids, fumes, oxides, gases, vapors, odors, toxic or radioactive substances, waste, particulate, solid, liquid or gaseous matter, or any other materials in such place, manner or concentration as to cause injury, detriment, nuisance, or annoyance to the public, or to endanger the health, comfort, repose, safety or welfare of the public, or in such a manner as to cause or have a natural tendency to cause injury or damage to business or property."

hydrochloric acid vapor and silicon dioxide, commencing on April 26, 1974, and continuing through and including May 26, 1974, constituted "atmospheric" pollution in violation of that section. The complaints were entitled "In the Name and by the Authority of the People of the State of Illinois—City of Chicago a municipal corporation, Plaintiff v. Bulk Terminals Company."

On July 19, 1974, a trial was held in the Circuit Court of Cook County and Bulk was found guilty of violating section 17—2.6 on each and every day from April 26, 1974, up to and including May 9, 1974. The court assessed fines for the violations, and Bulk has paid them.

On or before July 31, 1974, all silicon tetrachloride previously stored by Bulk had been removed from the premises.

Complaints were also filed against Bulk before the Illinois Pollution Control Board (hereinafter Board) by Citizens for a Better Environment (hereinafter CBE) and the Environmental Protection Agency (hereinafter EPA), defendants herein, in connection with the storage tank leak. In the CBE's complaint, Bulk is charged with violations of section 9(a) of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1009(a)) and related Rule 102 of chapter 2 of the Illinois Pollution Control Board Rules and Regulations for causing air pollution as a result of the leak.[2] Gerald L. Spaeth, Bulk's president, is named as

---

[2] Section 9 of the Environmental Protection Act provides in part:
  "No person shall:
    (a) Cause or threaten or allow the discharge or emission of any contaminant into the environment in any State so as to cause or tend to cause air pollution in Illinois, either alone or in combination with contaminants from other sources, or so as to violate regulations or standards adopted by the Board under this Act;
    (b) Construct, install, or operate any equipment, facility, vehicle, vessel, or aircraft capable of causing or contributing to air pollution or designed to prevent air pollution, of any type designated by Board regulations, without a permit granted by the Agency, or in violation of any conditions imposed by such permit;"
Section 3 of the Act contains the following definitions:
       *     *     *
    (b) "Air Pollution" is the presence in the atmosphere of one or more contaminants in sufficient quantities and of such characteristics and duration as to be injurious to human, plant, or animal life, to health, or to property, or to unreasonably interfere with the enjoyment of life or property.
       *     *     *
    (d) "Contaminant" is any solid, liquid, or gaseous matter, any odor, or any form of energy, from whatever source." Ill. Rev. Stat. 1973, ch. 111½, par. 1003(b)(d).
       *     *     *
Other alleged violations in the CBE complaint relate to plaintiffs' failure to obtain an "operation permit" for a "new emission source," *i.e.*, the leak.

a co-defendant in the CBE's complaint, and is alleged to have been responsible for the maintenance of Bulk's storage facilities. In the EPA complaint Bulk is also charged with violations of section 9(a) of the Environmental Protection Act, and with a violation of Rule 102 of chapter 2 of the Rules and Regulations. Both actions were consolidated before the Board. Bulk and Spaeth filed answers to the complaints with the Board and therein set forth facts relating to the prosecution by the City of Chicago, alleging thereby that the prosecution pending before the Board was barred by the doctrine of double jeopardy and res judicata. In addition, Bulk and Spaeth filed before the Board a motion to dismiss and an amended motion to dismiss predicated on the above defenses. The amended motion to dismiss was denied by the Board on September 5, 1974.

Thereafter Bulk and Spaeth filed an action in the circuit court praying for a declaratory judgment with injunctive relief and a writ of prohibition against the EPA, the CBE, and the Board. By this action they sought to terminate the CBE and EPA actions before the Board. It was contended that the State of Illinois should be prevented from twice prosecuting them for the same offense. The trial court held, on defendants' motion to dismiss, that the action was premature since the plaintiffs had not exhausted all remedies under the Environmental Protection Act and the Administrative Review Act. The plaintiffs action was therefore dismissed, and this appeal followed.

The plaintiffs, herein Bulk and Spaeth, contend that both the Illinois and United States constitutional safeguards against double jeopardy (U.S. Const. amends. V and XIV; Ill. Const. art. I, sec. 10 (1970)), and the doctrine of res judicata, preclude the actions pending before the Pollution Control Board. Double jeopardy is said to have applicability because the plaintiffs are being exposed to punishment for alleged unlawful conduct which they have already been punished for once by the State of Illinois through its political subdivision, the city of Chicago. Res judicata is said to have applicability because both the city action and the Board actions arise from the same subject matter, are in essence the same cause of action, and involve the same parties. It is further urged that this is a proper case for the exercise of the circuit court's power to issue a writ of prohibition or to order injunctive relief, and that the relief requested is not precluded by the failure to obtain first a final order from the Board.

The defendants respond first that the relief sought is premature, and that the proper procedure is an appeal to this court from a final decision of the Board. It is further urged by the defendants that, in any event,

the constitutional mandate against double jeopardy and the doctrine of res judicata are for various reasons inapplicable as a bar to the Board proceedings.

We hold herein that, in view of the previous prosecution and fine under the city ordinance, the pending proceedings before the Board are barred either under a theory of double jeopardy or res judicata, and that the request for relief in the circuit court was not premature. We accordingly reverse the order of the circuit court.

As indicated, the circuit court dismissed the plaintiffs' complaint without reaching the merits of the controversy because it viewed the action as premature in that plaintiffs did not exhaust their administrative remedies. This threshold procedural issue must first be given some attention.

The ordinary procedure for reviewing a decision of the Pollution Control Board is pursuant to the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et. seq.*).[3] Section 2 thereof provides in part:

"This Act shall apply to and govern every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of this Act. In all such cases, any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not be employed after the effective date hereof." Ill. Rev. Stat. 1973, ch. 110, par. 265.

■■ The Administrative Review Act therefore applies where a final decision of an administrative agency has been made; and other modes of review in such cases are abolished. (*People ex rel. Carpentier v. Goers*, 20 Ill.2d 272, 170 N.E.2d 159.) In the instant action however, plaintiffs seek in effect to prevent the State of Illinois from twice prosecuting and fining them for the same offense. We feel that to allow a remedy in a judicial forum only after the fact of double prosecution would be improper and could not be mandated by the Administrative Review Act. That act, like any statute, should be interpreted so as to promote its essential purposes and to avoid, if possible, a construction that would raise doubts as to its validity. (*Craig v. Peterson*, 39 Ill.2d 191, 201, 233 N.E.2d 345, 351.) Similar exceptions to ordinary administrative review have been sanctioned. See *People ex rel. Hurley v. Graber*, 405 Ill. 331,

---

[3] The procedure is modified somewhat by section 41 of the Environmental Protection Act, which provides for direct review in the appellate court rather than in the circuit court first. Ill. Rev. Stat. 1973, ch. 111½, par. 1041.

90 N.E.2d 763; *W. F. Hall Printing Co. v. Environmental Protection Agency*, 16 Ill.App.3d 864, 306 N.E.2d 595.

■■ In regard to the merits, we emphasize first that both the action filed by the city and by the EPA and CBE similarly alleged that beginning with April 26, 1974, a leak developed in one of the storage tanks on Bulk's premises and by virtue of the leak the silicon tetrachloride contained in the tank reacted with the moisture in the air to produce certain emissions of hydrochloric acid vapor and silicone dioxide. This was alleged to have polluted the air or atmosphere as prohibited by the Environmental Protection Act and the Municipal Code of Chicago. A review of the statute and ordinance, set out in footnotes above, will indicate that there is a substantial similarity between the two. We therefore are of the opinion that the plaintiffs are being exposed to double jeopardy. *Cf. Waller v. Florida*, 397 U.S. 387; *People v. Allison*, 46 Ill.2d 147, 263 N.E.2d 80.

■■ In *Waller v. Florida*, the petitioner had been convicted and sentenced by the city of St. Petersburg for violating city ordinances against destruction of city property and disorderly breach of the peace when he and a group of others removed and damaged a mural which had been affixed to a wall inside the city hall. Subsequently the State of Florida charged petitioner with grand larceny, and it was conceded that the charge was based on the same acts as were involved in the city ordinance violations. The United States Supreme Court held that successive State and municipal prosecutions for the same conduct constituted double jeopardy. It found relevant certain language in its opinion in *Reynolds v. Sims*, 377 U.S. 533, 575, to which we also subscribe:

> "Political subdivisions of States—counties, cities or whatever— never were and never have been considered as sovereign entities. Rather, they have been traditionally regarded as subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions."

In the case here, the State has delegated certain of its authority to protect the environment to various subordinate governmental instrumentalities, *e.g.*, municipal corporations, the Pollution Control Board, the EPA.[4] These are not sovereign entities; they are the State of Illinois acting through different agencies. The CBE, although not a State agency as such, by its actions before the Board, purports to represent the people of the State of Illinois under a unique provision of the Environmental Protection Act

---

[4] We again note that the complaints filed by the city were entitled "In the Name and by the Authority of the People of the State of Illinois—City of Chicago a municipal corporation, Plaintiff v. Bulk Terminals Company."

authorizing such private initiation of enforcement actions. (Ill. Rev. Stat. 1973, ch. 111½, par. 1031(b).) In effect the CBE is acting as a private attorney general, and we view its position to be no different for our purposes here than the State agencies empowered to deal with pollution matters. One prosecuted should not lose the protection made applicable here because of the State's choice of the manner of commencing the action. We further note that ultimate enforcement of any Board order entered in the action commenced by the CBE would be by means of an action by the State's Attorney or Attorney General in the Circuit Court of Cook County, which action would not be brought in the name of the CBE but rather in the name of the People of the State of Illinois. (Ill. Rev. Stat. 1973, ch. 111½, par. 1042(e).) The State, having once placed plaintiffs in jeopardy, cannot do so again through the device of a statutory scheme of citizen-initiated administrative action for penalties.

The defendants center their entire argument regarding double jeopardy on the premise that it is inapplicable because the action before the Board[5] dos not seek the imposition of "criminal" sanctions. (*Helvering v. Mitchell*, 303 U.S. 391.)

■■ We first point out that one need not be threatened with more than a mere fine for the principle of double jeopardy to apply. In *People v. Allison*, 46 Ill.2d 147, 263 N.E.2d 80, for example, the State unsuccessfully attempted to distinguish *Waller v. Florida*, 397 U.S. 387, discussed above, by claiming that double jeopardy was not invocable since one of the prosecutions involved in *Allison* had been for the violation of a municipal ordinance which was punishable only by fine.

We must acknowledge, however, that the Illinois Supreme Court has, in other contexts, labeled the fines imposed by the Pollution Control Board pursuant to statutory authority as "civil" in nature. (*City of Monmouth v. Pollution Control Board*, 57 Ill.2d 482, 313 N.E.2d 161; *City of Waukegan v. Pollution Control Board*, 57 Ill.2d 170, 311 N.E.2d 146.) In *City of Waukegan*, the Illinois Supreme Court considered whether the Board could be empowered to assess monetary penalties at all, and held that the authority given the Board to impose such penalties does not

---

[5] The nature of the city fine is not focused upon by the defendants. The language of the ordinance elucidates this somewhat in indicating the intent to *punish* violators:
"Any person found guilty of violating * * * any of the provisions of this Article II * * * upon conviction thereof shall be *punished* by a fine of not less than One Hundred Dollars nor more than $300.00 for the first offense, and not less than $300.00 nor more than $500.00 for the second and each subsequent offense, in any 180 day period; provided, however, that all actions seeking the imposition of fines only shall be filed as quasi criminal actions subject to the provisions of the Illinois Civil Practice Act * * *." (Emphasis added.) Chicago Municipal Code sec. 17—2.62 (1973).

violate the constitutional separation of powers or amount to an improper delegation. In *City of Monmouth*, the court deemed the fines authorized as noncriminal in holding that certain procedural safeguards applicable to criminal proceedings are not applicable in proceedings before the Board.

Notwithstanding those decisions, we do not feel constrained to discard the safeguard against double jeopardy in the present case, where the imposition of a second penalty, be it labeled "civil" or "criminal" for other purposes, is being threatened by the State for the same alleged wrong. We hold only this: considering the nature of the violation alleged here, a previous prosecution and fine imposed by the city of Chicago pursuant to its ordinance precludes the threat of a second fine by the Board based on the same conduct.

In *United States v. La Franca*, 282 U.S. 568, the defendant was first convicted and fined in a criminal prosecution under the National Prohibition Act for unlawful sales of intoxicating liquors. Subsequently he was sued by the United States in a civil action for nonpayment of taxes and penalties with respect to the same conduct—unlawful sales of intoxicating liquors. Pleas of former jeopardy and res judicata were overruled by the district court in the civil action and judgment was entered for the full amount sued for. The court of appeals reversed and was affirmed by the United States Supreme Court. Although the case was ultimately resolved by the court's construction of a statute involved barring double "prosecution," the problem of double jeopardy posed by the facts, and analogous to the instant case, was discussed. The court first considered whether the designation of the amount of money exacted in the civil proceeding as a "tax" was determinative, and stated:

> "A tax is an enforced contribution to provide for the support of government; a penalty, as the word is here used, is an exaction imposed by statute as punishment for an unlawful act. The two words are not interchangeable, one for the other. No mere exercise of the art of lexicography can alter the essential nature of an act or a thing; and if an exaction be clearly a penalty it cannot be converted into a tax by the simple expedient of calling it such. That the exaction here in question is not a true tax, but a penalty involving the idea of punishment for infraction of the law, is settled * * *." 282 U.S. at 572.

The court then posed the following question:

> "Respondent already had been convicted and punished in a criminal prosecution for the identical transactions set forth as a basis for recovery in the present action. He could not again, of course, have been prosecuted criminally for the same acts. Does

the fact that the second case is a civil action, under the circumstances here disclosed, alter the rule?" 282 U.S. at 573.

The court, adopting the following language from an earlier case (*United States v. Chouteau,* 102 U.S. 603, 611), resolved the question with an analysis which we find quite relevant in the instant case:

"'*Admitting that the penalty may be recovered in a civil action, as well as by a criminal prosecution, it is still as a punishment for the infraction of the law. The term "penalty" involves the idea of punishment, and its character is not changed by the mode in which it is inflicted, whether by a civil action or a criminal prosecution.* * * * [The defendant] has been punished in the amount paid upon the settlement for the offense with which he was charged, and that should end the present action, according to the principle on which a former acquittal or conviction may be invoked to protect against a second punishment for the same offence. To hold otherwise would be to sacrifice a great principle to the mere form of procedure, and to render settlements with the government delusive and useless.*'" 282 U.S. at 573-74. (Emphasis added.)

The court continued in its own language that "an action to recover a penalty for an act declared to be a crime is, in its nature, a punitive proceeding, although it take the form of a civil action; and the word 'prosecution' is not inapt to describe such an action." 282 U.S. at 575.

■■ We thus feel that the designation of the threatened fines in the case at bar as "civil" for other purposes, such as for determining whether certain criminal procedural safeguards are required in the proceeding culminating in the fine (*City of Monmouth v. Pollution Control Board,* 57 Ill.2d 482, 313 N.E.2d 161) is not determinative here; and we are likewise of the opinion that "to hold otherwise would be to sacrifice a great principle to the mere form of procedure. The city imposed a fine for the storage tank leak, and its proceedings were a matter of public record. The Board proceedings, like the city prosecution, may culminate in the imposition of a monetary penalty, after the fact, for substantially the same alleged violation. Such a practice smacks of fundamental unfairness. The source of the alleged air pollution has long since been eliminated, and no threat to the environment presently exists. The objective of penalization once accomplished should end the matter whether the actions are designated criminal or civil. Multiple actions for the same offense should be discouraged or consolidated in some manner by the State. The jurisdiction of a court of equity to restrain the maintenance of vexatious or harassing litigation is well established. 42 Am. Jur. 2d *Injunctions* sec. 206 (1969); 43 C.J.S. *Injunctions* sec. 40(h) (1945).

■■ In closing, we also find that the related concept of res judicata may

well have applicability here. In order to rely upon a former adjudication as a bar under this doctrine, it must be determined that the cause of action is the same in both proceedings, the two actions are between the same parties or their privies, and the former adjudication was a final judgment or decree upon the merits by a court having jurisdiction. (*People v. Kidd*, 398 Ill. 405, 408-09, 75 N.E.2d 851, 854.) The doctrine acts as a bar to the consideration not only of questions actually litigated and decided, but to all grounds of recovery or defense which might have been presented in the first proceeding. (*People v. Kidd*, 398 Ill. at 408, 75 N.E. 2d at 853-54.) There is no dispute that the judgment entered in the city action was final and that the court had jurisdiction to render it. Further, as we indicated, the violations alleged are substantially similar in both cases, *i.e.*, causing or allowing air or atmospheric pollution as a consequence of the silicon tetrachloride leak. The slight difference in the language of the statutes does not change the nature of the cause of action for our purposes here. Also, for reasons analogous to those discussed earlier, both the city and Board proceedings involve the same parties or their privies. (See *Healy v. Deering*, 231 Ill. 423, 83 N.E.2d 226.) We disagree with the defendants' strenuous contention that the difference in remedy or amount of the penalties authorized in the city ordinance and the State statute prohibits the application of res judicata, or compels the conclusion that the legislative purpose behind the Environmental Protection Act will be frustrated by barring the Board proceeding here. It cannot be emphasized too strongly that all of the issues regarding the storage-tank-leak incident could and should have been resolved in one action by the People of the State of Illinois. The same ultimate purpose that was sought by the city—the protection of the environment—is being sought by the defendants here. As we have said, multiple actions for the same pollution violation should therefore be discouraged, or consolidated in some manner by the State. Fairness and justice so dictate.

For the reasons given, the judgment of the circuit court is reversed and the cause remanded with directions to enter an order consistent with the views expressed herein.

Reversed and remanded.

DIERINGER, P. J., and JOHNSON, J., concur.